**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**STANLEY WOOD and CHASTITY**                        **PLAINTIFFS**
**WOOD, Individually, and on Behalf of a**
**Class of Similarly Situated Persons**

**V.**                                 **CIVIL ACTION NO: 1:20CV42-NBB-RP**

**NORTH MISSISSIPPI MEDICAL**                   **DEFENDANTS**
**CENTER, INC., TUPELO SERVICE**
**FINANCE, INC., ALLIANCE**
**COLLECTION SERVICE, INC.,**
**NORTH MISSISSIPPI HEALTH**
**SERVICES, INC., AND NORTH**
**MISSISSIPPI CLINICS, LLC**

## ORDER

This cause comes before the court upon Plaintiffs Stanley and Chastity Wood's Motion
for Leave to Conduct Discovery. Defendant Alliance Collection Service, Inc. ("ACS") and
Defendants North Mississippi Clinics, LLC ("NMC"), North Mississippi Health Services, Inc.
("NMHS"), North Mississippi Medical Center, Inc. ("NMMC"), and Tupelo Service Finance,
Inc. ("TSF") (collectively "the hospital defendants") filed responses, and the plaintiffs filed a
rebuttal. The court has reviewed all relevant pleadings and applicable law and is ready to rule.

### Factual and Procedural Background

In 2017, Chastity Woods ("Chastity") required multiple non-elective medical treatments,
including blood and iron transfusions. She received these treatments from NMHS, NMC, and
NMMC (collectively "the providers"). Chastity was employed by R.J. Young Company and was
insured under an employee benefit plan administered by Health Cost Solutions. Chastity's health

1

plan covered medical expenses "for services, supplies and/or treatment rendered. This amount does not include any cost sharing amounts (i.e. copayments, deductibles, or coinsurance), or charges for non-covered services.…" [Doc. 45 at 4]. Chastity signed a "Consent for Treatment, Admission, and Release of Health Information," which included an assignment of benefits. The providers received payment from Chastity's health plan for services rendered. The plaintiffs allege that, after receiving at least 48 payments pursuant to the accepted terms, conditions, and limitations of the Plan Documents in 2017, the providers demanded nearly $50,000 in additional payments from the Woods in 2018. In March 2019, the Woods accepted a special "tax time deal" and paid all medical debt at a 20% reduced rate by taking out a home equity line of credit. NMMC received $6,041.14, TSF received $6,412.62 on behalf of NMMC, and ACS received $29,489.00. After the Woods paid nearly $42,000 to the Providers and ACS, the Woods allege that ACS resumed collection in October 2019 seeking payment of an additional $8,936.05. According to the plaintiffs, ACS called Chastity multiple times on numerous dates in a harassing attempt to obtain payment. The calls did not cease until this action was commenced on February 26, 2020.

The Woods filed their First Amended Complaint on February 23, 2021, suing ACS and the hospital defendants alleging fraud and misrepresentation, breach of contract, violation of statutory law, unfair debt collection practices, and civil conspiracy. More specifically, the plaintiffs assert that the defendants jointly engaged in an illegal practice known as "balance billing" which was the underlying activity that led to the various claims asserted. Balance billing occurs when a provider accepts a patient, receives an assignment of benefits guaranteeing payment, provides covered services, bills the patient's health plan, receives payment pursuant to the accepted terms of the plan, and then bills the patient for an amount which is not expressly

authorized by the plan or by relevant law. The Woods contend that the hospital defendants and ACS are jointly and severally liable under various legal theories and statutory law including the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692k) and Miss Code Ann. § 85-5-7(4). The Woods seek damages and equitable relief, including a permanent injunction against the issuance, collection, and/or attempted collection of balance bills, an accounting, and complete disgorgement of any and all ill-gotten revenue, gains, and profits.

ACS filed its Motion to Dismiss Amended Complaint or for Summary Judgment on March 31, 2021. The hospital defendants filed their Motion to Dismiss on the same day. The hospital defendants also filed a joinder in ACS's motion on April 6, 2021. Both motions contain various arguments for dismissal of the case including failure to plead sufficient facts for a FDCPA claim, failure to exhaust administrative remedies under the Employee Retirement Income Security Act ("ERISA"), failure to establish a contractual relationship to support a breach of contract claim, and an assertion that the Woods' claims are time-barred.

It is noteworthy that attached to ACS's motion are several exhibits including a 56-page declaration of Jeff Chambers, the President of ACS, and a 4-page entry of "Insurance Plan Document Excerpts." Also of note, the hospital defendants' motion includes two exhibits, a 4-page document representing Chastity's consent for treatment and several pages of TSF's collection letters. The hospital defendants state, "[I]t is well settled that plaintiffs are not entitled to conduct discovery to respond to a motion to dismiss." [Doc. 68 at 1-2]. However, "to the extent that Plaintiffs seek discovery from Hospital Defendants to respond to [ACS's] motion, which is brought under Rules 12(b)(6) and 56, their submissions do not show how their requested discovery will allow them to avoid summary dismissal of their claims . . . ." [*Id*. at 2].

The Woods subsequently filed this Motion for Leave to Conduct Discovery. The Woods assert that they are entitled to discovery because ACS and the hospital defendants have included factual matters and attachments that are outside of the pleadings requiring that the motions be treated as motions for summary judgment, not motions to dismiss.

<u>Standard of Review</u>

The Woods assert that the court should treat ACS and the hospital defendants' pleadings as motions for summary judgment based on Federal Rule of Civil Procedure 12(d), which states:

> **d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Accordingly, the Woods seek leave to conduct discovery under Federal Rule of Civil Procedure 56(d), which states:

> **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> **(1)** defer considering the motion or deny it;
> **(2)** allow time to obtain affidavits or declarations or to take discovery; or
> **(3)** issue any other appropriate order.

The Woods also cite Local Uniform Civil Rule 16(b)(3)(B) in support of their motion. "Whether to permit discovery on issues related to the motion and whether to permit any portion of the case to proceed pending resolution of the motion are decisions committed to the discretion of the court, upon a motion by any party seeking relief." L.U.Civ.R. 16(b)(3)(B).

"Although 'a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course,' the party seeking additional discovery must first demonstrate 'how that discovery will create a genuine issue of material fact.'" *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.,* 565 F.3d 948, 963 (5th Cir. 2009). Specifically, the party

seeking a continuance is required to "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013).

<u>Analysis</u>

If the defendants' dispositive motions are categorized as motions to dismiss, the Woods are not entitled to discovery. If the motions are considered motions for summary judgment, relevant discovery is appropriate. The only issue before the court at this point is whether the Woods should be granted discovery given the content of the defendants' pending dispositive motions.

A review of the pleadings finds attached to ACS's Motion for Summary Judgment a declaration from ACS's President, Jeff Chambers, wherein he asserts that the Woods' FDCPA claim is baseless, and that ACS did not violate the law. In Mr. Chamber's declaration he states that ACS is a collection assignee of NMMC, and he references attachments of regularly kept business records that relate to the Woods' case and specifically eleven unpaid accounts that amount to $8,936.05 in debt. Mr. Chambers states that ACS was never asked to collect and has not collected any amount from the Woods other than deductibles, co-pays, or noncovered charges which are proper balance billing collections. Finally, Mr. Chambers states ACS was aware of the "tax time" discount of 20% offer to the Woods and acceptance by the Woods but that ACS did not offer the deal, and once the payment of $29,489 was delivered, ACS accepted the check to satisfy all accounts. The other exhibit to ACS's Motion for Summary Judgment is

an excerpt on appeals from the Mississippi State and School Employees' Life and Health Insurance Plan.

Attached to the hospital defendants' Motion to Dismiss is Chastity's 4-page Consent for Treatment, Admission, and Release of Health Information, which she signed to receive treatment, and several collection letters from TSF to Chastity. These documents are offered to support the assertion that the Woods failed to plead plausible claims for balance billing under FDCPA or contract law. The court has reviewed the pleadings and finds that the defendants' supporting documentation is "outside of the pleadings" and, therefore, the court finds that defendants' motions should be treated as motions for summary judgment.

Having so found, the court turns to the question of whether the Woods have provided enough substantive reasoning to support discovery in this case. "[A] plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by plaintiff to withstand a … motion for summary judgment." *Paul Kadair, Inc. v. Sony Corp. of Am.,* 694 F.2d 1017, 1030-31 (5th Cir. 1983). "Exercising a sound discretion, the trial court … determines whether the stated reasons [for discovery] are adequate." *Walters v. City of Ocean Springs*, 626 F.2d 1317, 1321 (5th Cir. 1980).

Both ACS and the hospital defendants oppose the Woods' motion and assert that the Woods' requested discovery will not influence the outcome of the defendants' dispositive motions. To the contrary, the Woods assert that discovery should be permitted at this juncture because the arguments that the defendants put forth in their pleadings require discovery for an appropriate and thorough response to the motions for summary judgment. In their motion, the Woods state what they seek as follows:

> [T]he Woods seek an opportunity to conduct the deposition of Mr. Chambers, and
> to require ACS and/or the Hospital Defendants to produce documents in advance
> of his deposition, so that they may test the claims made in ACS's summary
> judgment motion and in Mr. Chamber's supporting declaration and its exhibits.
> The Woods also seek to test the summary judgment arguments made by the
> Hospital Defendants in their motion. To do so, the Woods request a deposition
> pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. [Doc. 64 at 6]

In their rebuttal, the Woods provide a more specific description of what they intend to gain from discovery. [Doc. 71]. (1) The Woods seek to depose Mr. Chambers because it is the type of discovery with the highest reliability and is necessary to determine the jurisdiction of the court to hear issues of federal law under the FDCPA. (2) The Woods seek to discover whether the amounts collected or attempted to collect are authorized by relevant law. (3) The Woods seek to determine whether the amounts collected or attempted to be collected were expressly authorized by the agreement allegedly creating the debt. (4) The Woods seek to review their Explanation of Benefits ("EOB") insurance records. (5) The Woods intend to question Mr. Chambers' understanding of balance billing. (6) The Woods would like a production of all of ACS's and TSF's collection letters for a complete understanding of liability under FDCPA and to shed light on the alter ego theory of liability. (7) The Woods assert that the collection documentation should also reveal whether the collections were for "non-covered charges" that are allowable for collection and whether there was an existence of conspiracy in collection among the parties.

The Woods ask for sixty days in which to conduct discovery related to the matters raised in the defendants' motions. The court agrees that the documents attached to the defendants' pleadings are submitted to support factual allegations and are not part of the "pleadings."

The court therefore finds the Woods' justification of the need for discovery persuasive and in the interest of judicial economy. Discrepancies between the parties regarding the collection practices of the creditors, the amounts sought, and the classification of the debt are

issues central to the case and can be more effectively addressed by the parties and the court after the requested discovery. Accordingly, the court deems the discovery necessary for the plaintiffs' response to the defendants' motions for summary judgment.

Conclusion

In accordance with the foregoing analysis, the court finds that the defendants' motions to dismiss shall be treated as motions for summary judgment, and as such, the Woods are entitled to discovery. It is, therefore, **ORDERED AND ADJUDGED** that the Woods' Motion for Leave to Conduct Discovery [63] is **GRANTED**. The court will allow sixty (60) days for the Woods to depose Jeff Chambers and to request a reasonable and pertinent production of documents in preparation for responding to the defendants' motions for summary judgment. The original motions will be denied without prejudice at this time. Upon close of discovery, the defendants will be granted seven (7) days within which to refile their summary judgment motions, and the plaintiffs will be granted fourteen (14) days to respond thereto.

This 25th day of March, 2022.

 /s/ Neal Biggers
NEAL B. BIGGERS, JR.
UNITED STATES DISTRICT JUDGE