**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**STANLEY WOOD** *and* **CHASTITY**       **PLAINTIFFS**
**WOOD,** *Individually, and on Behalf of*
*a Class of Similarly Situated Persons*

**v.**        **CIVIL ACTION NO. 1:20-cv-42-TBM-RP**

**NORTH MISSISSIPPI HEALTH**
**SERVICES, INC.** *et al.*       **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

On February 23, 2021, Stanley and Chastity Wood, a husband and wife, filed their First Amended Class Action Complaint [45] on behalf of themselves and similarly situated persons. Their claims stem from alleged balance bills that the Defendants sent Chastity Wood,[1] and the methods by which the Defendants sought to collect the debt. In their Amended Complaint, the Woods assert five causes of action against North Mississippi Health Services, North Mississippi Clinics, LLC, North Mississippi Medical Center, Inc., Tupelo Service Finance (collectively, the "Hospital Defendants"), and Alliance Collection Service, Inc. ("Alliance") including: (1) violations of the Fair Debt Collection Practices Act; (2) violations of Mississippi Code Section 83-9-5; (3) fraud and misrepresentation; (4) breach of contract; and (5) civil conspiracy.

Now before the Court is the Woods' Motion to Certify Class [195]; Alliance's Motion to Dismiss or for Summary Judgment [221]; and the Hospital Defendants' Motion for Partial Summary Judgment [223]. For the reasons discussed fully below, Alliance's Motion to Dismiss or

---

[1] Balance billing occurs when medical providers bill a patient for the difference between the amount they charge, and the amount the patient's insurance approves and actually pays. There are different examples when dealing with out of network providers. But one example is when a medical provider charges $100 for services, but the patient's insurance company only pays $70; balance billing can occur if the medical provider then sends a bill to the patient for the remaining $30.

for Summary Judgment [221] is granted, and the Hospital Defendants' Motion for Partial Summary Judgment [223] is granted. Accordingly, the Court dismisses the Woods' Fair Debt Collection Practices Act claims; dismisses the Woods' alleged statutory violations claims based on Mississippi Code Section 83-9-5; dismisses the Woods' fraud and misrepresentation claims against Alliance; dismisses the Woods' fraud and misrepresentation claims against the Hospital Defendants in part;[2] dismisses the Woods' breach of contract claims against Alliance; dismisses the civil conspiracy claims against Alliance; and dismisses the civil conspiracy claims against the Hospital Defendants in part.[3] In short, all of the Woods' claims against Alliance are dismissed, and the Woods' claims for fraud and misrepresentation, breach of contract, and civil conspiracy, against the Hospital Defendants will continue as set forth in this Opinion.

For these reasons, only the Woods' breach of contract claims against the Hospital Defendants remain for class certification consideration.[4] Upon review of the Woods' Motion to Certify Class [195], the Woods' proposed class is not clearly defined. But even if it was, the Woods' Motion would fail on numerosity grounds. For the reasons discussed fully below, the Woods' Motion to Certify Class [195] is denied without prejudice to allow for refiling after sufficient discovery has been completed.

---

[2] The fraud and misrepresentation claims against the Hospital Defendants based on Mississippi Code Section 83-9-5 are dismissed, but those based on the alleged tax-time deal remain.

[3] The civil conspiracy claims based on Mississippi Code Section 83-9-5 and the FDCPA are dismissed, but the civil conspiracy claim premised on the Woods' breach of contract claim remains.

[4] The Woods do not move for class certification of their fraud and misrepresentation claims or their civil conspiracy claims.

# I. BACKGROUND AND PROCEDURAL HISTORY

In 2017, Chastity Wood "required dozens of non-elective medical treatments, including blood and iron transfusions." [45], pg. 2. She received treatments from various providers in the North Mississippi Health Services system, such as North Mississippi Clinics, LLC, and North Mississippi Medical Center, Inc. (collectively "the medical providers"). *Id.* at pg. 3. Through her employer, Chastity was insured under an employee benefit plan administered by Health Cost Solutions, and her husband, Stan, was insured under the state health plan administered by Blue Cross/Blue Shield. *Id.* According to the Amended Complaint [45], the Woods "examined their plan documents before the treatments began and determined the lower annual deductible under Chastity's plan would save them from significant expense."

Prior to providing treatment to Chastity, the medical providers required that she present a card demonstrating entitlement to coverage pursuant to an insurance policy or health plan. *Id.* The Woods assert the medical providers confirmed that Chastity was entitled to coverage under her employee benefit plan ("the Plan") and required Chastity to execute a "Consent for Treatment, Admission, and Release of Health Information." *Id.* at pg. 5. The consent form included an assignment of benefits that gave the medical providers a guarantee of payment via an assignment of "all rights, benefits and interest under [her] health plan . . . in consideration for services rendered." *Id.* (internal quotations and citations omitted).

According to the Woods, Health Cost Solutions paid at least 48 claims for medical services that Chastity received and "[a]t least nine of the 48 claims were pre-certified and paid at an agreed upon rate." *Id.* Setting aside those nine claims, the others "were paid consistent with the express

terms, conditions and limitations of the Plan Documents at 140% of the rate Medicare would have paid." *Id.* at pg. 6.

In 2018, at some point after receiving at least 48 payments from Health Cost Solutions, the medical providers demanded that the Woods pay almost $50,000.00 in additional payments. *Id.* Collection efforts were presumably commenced by Tupelo Service Finance and Alliance, on behalf of the medical providers. The Woods assert that they communicated with Health Cost Solutions, Tupelo Service Finance, and Alliance in an attempt to resolve the situation, but were unable to reach a resolution. *Id.* at pg. 7.

The Woods contend that in March 2019 the Hospital Defendants offered a special "tax time deal," and if the Woods agreed to pay their debt before April 1, 2019, they could receive a limited-time 20% discount. *Id.* at pg. 7. As alleged by the Woods, "[f]earing they would miss out on a one-time opportunity to obtain a discounted rate, [they] rushed to Renasant Bank on March 21, 2019, and completed a consumer loan application." *Id.* The Woods secured a home equity line of credit and, on March 26, 2019, paid the following amounts: "$6,041.14 to [North Mississippi Medical Center, Inc.], $6,412.62 to [Tupelo Service Finance], and $29,489.00 to [Alliance]." *Id.*

After paying these amounts and believing that the matter was resolved, the Woods received another letter from Alliance in October 2019, where Alliance demanded an additional payment of $8,936.05. *Id.* at pg. 8. Upon receipt of this new demand, the Woods reached out to the Mississippi Insurance Department for help. *Id.* On November 14, 2019, the Mississippi Insurance Department wrote to Alliance explaining that balance bills for unauthorized and non-allowed amounts were prohibited by Mississippi law. *Id.* Despite this letter, the Woods assert that Alliance began calling Chastity "multiple times in a harassing attempt to obtain payment, including, on January 30, 2020

and February 4, 7, 10, 13, 17, and 20, 2020." *Id*. "The calls did not cease until this action was commenced on February 26, 2020." *Id*. at p. 8.

The Woods filed this putative class action on behalf of themselves and similarly situated persons on February 26, 2020, arguing that the Defendants engaged in unlawful billing practices in violation of federal and state law. The Woods' Complaint [1] was dismissed without prejudice on October 23, 2020, for failure to state a claim. [32]. Despite the dismissal, the Woods were granted leave to amend, and their Amended Complaint [45] was filed on February 23, 2021.

The Hospital Defendants and Alliance each filed a Motion to Dismiss [54] [56] the Amended Complaint, and in response, the Woods filed a Motion for Discovery [63]. Shortly after briefing was complete on these motions, Senior United States District Judge Michael P. Mills recused, and this matter was reassigned to Senior United States District Judge Neal B. Biggers. [72]. Judge Biggers ultimately denied Alliance's Motion to Dismiss [54] and the Hospital Defendants' Motion to Dismiss [56] and granted the Woods' Motion for Discovery [63].

On February 29, 2022, Alliance filed a Motion to Dismiss or for Summary Judgment [114], and the Hospital Defendants filed a Motion for Partial Summary Judgment on ERISA Grounds [116]. The Woods requested, and received, time to file their responses to the Defendants' motions. In response, the Woods again filed a Motion for Discovery [128]. Before these motions were decided, the Woods filed their Motion to Certify Class [195] on January 3, 2023.

On February 15, 2023, Judge Biggers entered an Order of Recusal [207], and this matter was reassigned to United States District Judge Sharion Aycock. Judge Aycock then recused on February 28, 2023, and this matter was reassigned to Chief United States District Judge Debra Brown. [211]. Judge Brown immediately recused and Senior United States District Judge Glen

Davidson was assigned to this matter. [211]. Ultimately, Judge Davidson also recused, and this matter was finally reassigned to the undersigned on March 2, 2023. [214]. The Order of Reassignment [214] sets forth that because all of the District Judges in the North District of Mississippi recused, this matter was reassigned to the undersigned of the Southern District of Mississippi, with the case remaining in the Northern District of Mississippi, Aberdeen Division.

This Court set for hearing Alliance's Motion to Dismiss or for Summary Judgment [114], the Hospital Defendants' Motion for Partial Summary Judgment on ERISA Grounds [116], and the Woods' Motion for Discovery [128]. The hearing was set for March 30, 2023. At the hearing, the Court denied the motions without prejudice. [217]. The Court explained that given the discovery that had taken place since the filing of these motions, the oral arguments presented at the hearing, the convoluted procedural history, and the piecemeal briefing, updated briefing on the issues before the Court would be helpful. The Court set forth a briefing schedule and the issues to be addressed. [218], pg. 80. In accordance with this briefing schedule, Alliance filed the instant Motion to Dismiss or for Summary Judgment [221] and the Hospital Defendants filed the instant Motion for Partial Summary Judgment [223].

Alliance asserts in its Motion to Dismiss or for Summary Judgment [221] that all of the Woods' claims against it must be dismissed because (1) the Fair Debt Collection Practices Act claims are time-barred; (2) Mississippi Code Section 83-9-5 does not provide a private right of action; (3) there are no genuine issues of material fact as to the Woods' fraud and misrepresentation claims against Alliance; (4) the Woods fail to state a breach of contract claim against Alliance; and (5) there are no genuine issues of material fact as to the Woods' civil conspiracy claims against Alliance.

6

For their part, the Hospital Defendants focus on the Woods' claims arising under Mississippi Code Section 83-9-5 in their Motion for Partial Summary Judgment [223]. Specifically, the Hospital Defendants argue that Section 83-9-5 (1) does not provide a private right of action; (2) cannot be enforced against the Hospital Defendants; and (3) does not apply to Chastity's self-funded employee benefit plan. Because Section 83-9-5 is unenforceable, the Hospital Defendants assert that the Woods' claims premised on the statute must be dismissed. The Hospital Defendants allege that these claims include most of the Woods' Fair Debt Collection Practices Act claims; the fraud and misrepresentation claims based on balance billing; and the Woods' second and third civil conspiracy claims, which include allegations that the Defendants conspired to violate Mississippi law by balance billing and that the Defendants conspired together to use abusive, deceptive, unfair and unconscionable debt collection practices.

The Court will address Alliance's Motion and the Hospital Defendants' Motion together, beginning first with the FDCPA claims, and then turning to the state-law claims. Finally, the Court will address the Woods' Motion to Certify Class.[5]

---

[5] The Court need not address the Motion to Certify Class [195] before ruling on the dispositive motions. *Watkins v. Allstate Property and Cas. Ins. Co.*, No. 3:22-cv-487-KJ, 2023 WL 2624221, at *1 (S.D. Miss. Mar. 6, 2023) (collecting cases). In making such a determination, the Court considers two factors: (1) "whether an early resolution on the merits 'protect[s] both the parties and the court from needless and costly further litigation;'" and (2) "'whether the ruling would prejudice any of the parties.'" *Watkins*, 2023 WL 2624221 at *1 (quoting *Lawson v. FMR LLC*, 554 F. Supp. 3d 186, 192 (D. Mass. 2021)). Here, both factors are met. First, the Woods' breach of contract claims against Alliance and their alleged statutory violation claims fail as a matter of law. Thus, the costly and timely determination of class certification on these issues is avoided. Second, there is no unfair prejudice to the Woods because, "even if the class were certified, [those] claims would still fail as a matter of law." *Id.*

The Fifth Circuit has also held that in motions for class certification, courts should seek to "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination[.]" *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020). "If some of the determinations . . . cannot be made without a look at the facts, then the judge must undertake that investigation." *Chavez v. Plan Benefit Services, Inc.*, 957 F.3d 542, 545 (5th Cir. 2020) (quoting *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011)). The Court cannot merely "review a complaint and ask whether, taking the facts as the party seeking the class presents them, the case seems suitable for class treatment." *Id.* (emphasis added). For these reasons, the Court will address the Woods' Motion to Certify Class last.

## II. STANDARD OF REVIEW

"The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The Fifth Circuit has explained the *Iqbal/Twombly* standard as follows:

> In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise 'more than a sheer possibility' that the defendant has violated the law as alleged. The factual allegations must be 'enough to raise a right to relief above the speculative level.'

*Oceanic Expl. Co. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The Court need not "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). That said, "[p]leadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Chaudhary v. Arthur J. Gallagher & Co.*, 832 F. App'x 829, 832 (5th Cir. 2020). "The issue is not whether the plaintiff[] will ultimately prevail, but whether [they are] entitled to offer evidence to support [their] claim[s]." *Cook v. City of Dallas*, 683 F. App'x 315, 318 (5th Cir. 2017) (citation omitted).

Summary judgment is warranted when the evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citation omitted).

### III. FAIR DEBT COLLECTION PRACTICES ACT CLAIMS

The Woods assert that they "were pressured and pursed for collection by the Defendants for two years, during which time the Defendants committed numerous violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692." Specifically, the Woods allege that Alliance violated Section 1692d(5), Section 1692g(a)(2), Section 1692g(a)(4), and Section 1692g(b). And they say Tupelo Service Finance violated Section 1692e(4), Section 1692e(5), Section 1692e(7), and Section 16929g(a)(4). The Woods finally allege that the Defendants collectively violated Section 1692e(2)(A), Section 1692e(10), and Section 1692f(1).

Alliance seeks summary judgment on the FDCPA claims asserted against it because (1) the Woods lack standing; (2) all of the Woods' FDCPA claims are time-barred; and/or (3) there are no genuine issues of material fact. The Hospital Defendants move for partial summary judgment on the FDCPA claims asserted against them, arguing that the Woods' FDCPA claims premised on Mississippi Code Section 83-9-5 fail as a matter of law. The Court will address each argument in turn.

### A. Whether the Woods have standing to assert their FDCPA claims against Alliance

Federal courts are courts of limited subject matter jurisdiction. *Perez v. McCreary, Veskelka, Bragg & Allen, P.C.*, 45 F.4th 816, 821 (5th Cir. 2022). Meaning, the federal courts' "power to resolve disputes is limited to 'Cases' and 'Controversies,' U.S. Const. art. III, § 2, to prevent us from encroaching on domains properly allocated to the other branches in our system of self-government." *Perez*, 45 F.4th at 821 (citing *TransUnion LLC v. Ramirez*, ––– U.S. ––––, 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). A lawsuit is not a "Case" or "Controversy" unless the plaintiff can prove they have standing to bring suit. *Lujan*, 504 U.S. at 560-61. To prove standing, a plaintiff must "show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 141 S. Ct. at 2203. Additionally, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id*. at 2208.

Alliance's argument that the Woods lack standing to assert their FDCPA claims is two-fold. First, Alliance argues that the Woods' allegation of stress and confusion alone is insufficient to establish a concrete injury. Second, Alliance asserts that Stanley lacks standing because he does not fall under the "any person" language of Section 1692d and 1692k, he is not an aggrieved party as contemplated by Section 1692e and Section 1692f, and he is not considered a "consumer" under Section 1692c.

### i. Whether Chastity and Stanley have alleged a concrete injury

The Supreme Court has held that "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion*, 141 S. Ct. at 2205. In *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, the Fifth Circuit applied *TransUnion* to claims under the FDCPA and found that *per se* violations of the FDCPA's procedural provisions are not enough to show an injury in fact for Article III standing, as "*TransUnion* forecloses those theories." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 823-26 (5th Cir. 2022). Applying *TransUnion* to the FDCPA, the Fifth Circuit overruled *Sayles* and is progeny, which was the line of cases in the Fifth Circuit which previously held that mere statutory violations were enough to show an injury in fact. *Perez*, 45 F.4th at 823-25 (citing *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017)). Thus, alleging a "bare procedural violation" is not enough to allege an injury to confer standing under the FDCPA. *Id.* at 823 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016). Instead, plaintiffs must allege a concrete injury for both "substantive" or "procedural" violations under the FDCPA. *Id.*

Alliance argues that the Woods lack standing because the only "identified harm, aside from paying debt Chastity agreed to pay, is 'stress and confusion' which does not confer standing."

[222], pg. 16. Alliance is correct that "the state of confusion, absent more, is not a concrete injury under Article III." *Perez*, 45 F.4th at 825. But the Woods do not allege stress and confusion alone as their only injury. Instead, the Woods also allege that they "suffered actual monetary losses and consequential damages as the proximate result of the unlawful and conspiratorial conduct of the Defendants." [45], ¶ 133. The Woods further assert that "[t]he large and unexpected medical bills the Woods received in 2018, and the collection efforts that quickly followed, placed them under great financial strain and duress." [45], ¶ 45. Finally, the Woods "demand actual and statutory damages pursuant to 15 U.S.C. § 1692k, actual and consequential damages pursuant to MCA § 85-5-7(4), and all other actual, consequential and special damages which may be available including, without limitation, punitive damages, reasonable attorney's fees, costs, expenses, and pre- and post-judgment interest." [45], ¶ 155.

It is well-settled that a "monetary injury" is sufficient to confer standing.[6] *TransUnion*, 141 S. Ct. at 2204 (explaining that "certain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms."); *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 693 (8th Cir. 2017) (finding that the FDCPA violations caused the plaintiff tangible harm—the time and money required to defend against unjustified legal action). Indeed, any monetary harm satisfies the "injury-in-fact" requirement for purposes of Article III standing. *Vazzano v. Receivable Mgmt. Services, LLC*, 621 F. Supp. 3d 700, 707 (N.D. Tex. Aug. 12, 2022) ("to have suffered a 'concrete' harm, [plaintiff] must identify a

---

[6] In the Amended Complaint, the Woods also assert that they suffered $42,000 in economic damages by paying the balance bills. The Woods also allege that they "encumbered their real property in order to make the payments, and incurred unnecessary debt repayment obligations, [and] financing charges." [45], ¶¶ 134, 135.

physical harm, monetary harm, or intangible harm.").[7] Because the Woods have alleged various forms of monetary injury, the Court finds they have alleged a concrete injury.

### ii. Whether Stanley has statutory standing

Stanley asserts the following FDCPA claims against Alliance: Section 1692d(5), Section 1692g(a)(2), Section 1692g(a)(4), Section 1692 g(b), Section 1692e(2)(A), Section 1692e(10), and Section 1692f(1). Stanley submits that he has standing to assert his FDCPA claims pursuant to language found within Section 1692c, Section 1692d, Section 1692k, Section 1692e, and Section 1692f. But according to Alliance, Stanley lacks standing because—as Chastity's husband—he was a voluntary payor and he "was never obligated to pay Chastity's medical bills." [237], pg. 17.

Although Alliance argues that Stanley lacks Article III standing, such arguments are more properly addressed under a statutory standing analysis. The question presented by Alliance's argument is not whether Stanley has alleged a concrete injury, but "whether [Stanley] has a cause of action under the statute[s]." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014). By alleging that Stanley was a voluntary payor and never obligated to pay Chastity's medical bills, Alliance's fundamental argument is that Stanley does not fall "within the class of plaintiffs whom Congress has authorized to sue under" the FDCPA. *Lexmark Int'l, Inc.*, 572 U.S. at 128. And such arguments fall squarely within a statutory standing analysis, which is "simply statutory interpretation: the question it asks is whether Congress . . . has accorded this injured plaintiff the right to sue the defendant to redress his injury."

---

[7] *Church v. J Ritter Law P.C.*, 2023 WL 4353544, at *3 (D. N.J. Jul. 5, 2023); *Drummond v. Equifax Info. Services, LLC*, No. 5:20-cv-1362-DAE, 2021 WL 8055631, at *3 n3. (W.D. Tex. Jul. 14, 2021) ("Monetary harms readily qualify as concrete injuries under Article III.").

*Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 934 (8th Cir. 2012) (citation omitted). With these considerations in mind, the Court will discuss the language of each section in turn.

Section 1692c provides, in relevant part, that "a debt collector may not communicate with a *consumer* in connection with the collection of any debt." 15 U.S.C.A. § 1692 (emphasis added). Notably, Section 1692c states that "[f]or the purpose of this section, the term 'consumer' includes the consumer's spouse." *Id.* Therefore, to the extent that Stanley asserts a Section 1692c claim, he has standing as Chastity's spouse.[8]

Next, by its express terms, Section 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse *any person* in connection with the collection of a debt." 15 U.S.C.A. § 1692d (emphasis added). Other circuits have interpreted this to mean that "any person who has been harmed by a proscribed debt collection practice under § 1692d . . . [may] sue for damages under § 1692k(a)(2)(A)." *Montgomery v. Huntington Bank*, 346 F.3d 693, 697 (6th Cir. 2003).[9] Accordingly, Stanley has standing to sue under Section 1692d's "any person" language.

Section 1692k(a) governs who may enforce the provisions of the FDCPA. It provides that "any debt collector who fails to comply with any provision of this subchapter with respect to *any*

---

[8] *Betzler v. Citimortgage, Inc.*, No. 2:11-cv-986-MCE, 2011 WL 2516236, at *3 (E.D. Cal. Jun. 21, 2022) (finding that debtor's spouse had standing under Section 1692c); *Russell v. Goldman Roth Acquisitions, LLC*, 847 F. Supp. 2d 994, 999 (W.D. Mich. 2012) (finding that debtor's spouse was a "consumer" under Section 1692c); *McNab v. Statewide Recovery Ser. Inc.*, No. 99-1571, 2000 WL 135839, at *2 (E.D. La. Feb. 4, 2000) ("Because plaintiff is [the decedent's] spouse and the legal representative of his estate, she is a consumer within the meaning of the FDCPA and has standing to bring this action.") .

[9] *Todd v. Collecto, Inc.*, 731 F.3d 734, 737 (7th Cir. 2013) (explaining that "courts have stressed that Section 1692d is not a protection just for consumers but for *any* person mistreated by a debt collector." (emphasis in original)); *Rawlinson v. Law Off. of William R. Rudow, LLC*, 460 F. App'x 254, 258 (4th Cir. 2012) (finding that by Section 1692d's "express terms, *any person*—not just any debtor—who is the subject of abusive debt collection efforts may bring suit pursuant to Section 1692d." (emphasis in original)); *Coleman v. Credit Mgmt., LP*, No. 3:10-cv-2312-BMGL, 2011 WL 5248219, at *3 (N.D. Tex. Nov. 2, 2011) (finding that plaintiff could bring a Section 1692d claim pursuant to the "any person" language found therein).

*person* is liable to such person." 15 U.S.C. § 1692k(a) (emphasis added). The Sixth Circuit has determined that when Section 1692e—which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt"—is "read in conjunction with [Section] 1692k(a), this means that 'any aggrieved party may bring an action under § 1692e.'" *Montgomery*, 346 F.3d at 697 (citation omitted); *Johnson v. Bullhead Invs., LLC*, No. 1:09-cv-639, 2010 WL 118274, at *5 (M.D.N.C. Jan. 11, 2010) ("Because the plain language of Section 1692k does not limit recovery to 'consumers,' courts have recognized that under certain circumstances, third-party, non-debtors may have standing to bring claims under the FDCPA."). Other courts have adopted the Sixth Circuit's holding and explained that "Section 1692e does not specifically limit its scope to statements directed at 'consumers.'" *Schmitz v. Valentine & Kebartas, LLC*, No. 18-cv-15-NJ, 2019 WL 6619074, at *2 (E.D. Wis. Dec. 5, 2019). In other words, Section 1692e "may extend to any person 'harmed' or 'aggrieved' by a prohibited practice." *Barasch v. Est. Info. Services, LLC*, No. 07-cv-1693-NGG, 2009 WL 2900261, at *2 (E.D. N.Y. Sep. 3, 2009). This Court agrees with the Sixth Circuit's analysis and concludes that Stanley has standing to assert a Section 1692e claim.

Similarly, Section 1692f includes a general prohibition on unfair and unconscionable debt collection practices. *See* 15 U.S.C. § 1692f. The Seventh Circuit has found that while Section 1692f "does not indicate that it protects 'any person' . . . the reach of Section 1692 is readily apparent." *Todd v. Collecto, Inc.*, 731 F.3d 734, 738 (7th Cir. 2013). The Seventh Circuit concluded that "anyone aggrieved by a debt collector's unfair or unconscionable collection practices can fall within the provision's zone of interest." *Todd*, 731 F.3d at 738. The Eleventh Circuit has reached the same conclusion, holding that while Section 1692f "does not expressly state that it protects

'any person,'" "the provision's broad language with its illustrative examples of violative conduct support the conclusion that Section 1692f applies whether the unfair and unconscionable means are employed against consumers or non-consumers." *Milijkovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1301 (11th Cir. 2015).[10] Accordingly, the Court finds that Stanley has standing to assert a Section 1692f claim.

## B. Statute of limitations

Having determined that the Woods have standing to assert their respective FDCPA claims, the Court must now consider the statute of limitations and whether any of their FDCPA claims are time-barred. Any claim for violations of the FDCPA must be brought within one year from the date on which the violation occurs. 15 U.S.C. § 1692k(d). The Woods filed their original Complaint on February 26, 2020, but the original Complaint along with their FDCPA claims were dismissed without prejudice on October 23, 2020. The Woods did not file their Amended Complaint until February 23, 2021. Alliance asserts that all of the Woods' claims under the FDCPA were first alleged in the original Complaint, so the filing of the original complaint did not toll the statute of limitations. The Court agrees. *Bernard v. Brannigan*, 206 F. App'x 316, 216-17 (5th Cir. 2006) (finding that "because the complaint was dismissed without prejudice . . . it had no tolling effect.").[11]

---

[10] *Villalba v. Houslanger & Associates, PLLC*, No. 19-cv-4270-PKC, 2022 WL 900538, at *9 (E.D. N.Y. Mar. 28, 2022) (finding that third party could bring Section 1692f claim); *Lewis v. Titlemax of Arizona Inc.*, No. 21-cv-560-PHX, 2021 WL 4950350, at *2 (D. Ariz. Oct. 25, 2021) ("Courts consistently hold that non-debtors may assert claims under § 1692f of the FDCPA."); *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216 (D. Conn. 2014).

[11] *Williams v. Cook*, 264 F.3d 1142 (5th Cir. 2001) ("While the filing of an action normally tolls the statute of limitations, its dismissal without prejudice leaves the plaintiff in the same position as if the action had never been filed."); *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) (finding that "[w]hile the timely filing of Lambert's first suit tolled § 2401(b)'s six-month statute of limitations, the district court's order dismissing the suit without prejudice left Lambert in the same position as if the first suit had never been filed.").

Although the Woods argue that the discovery rule applies even if their claims are time-barred, the Supreme Court has "refused to 'enlarge' the FDCPA by 'read[ing] in' a discovery rule provision and noted that '[a]textual judicial supplementation' of a discovery rule was 'particularly inappropriate.'" *Martinelli v. Hearst Newspapers, L.L.C.*, 65 F.4th 231, 242 (5th Cir. 2023) (quoting *Rotkiskie v. Klemm*, 589 U.S. ---, 140 S. Ct. 355, 360-61, 205 L. Ed. 2d 291 (2020)). In other words, the Supreme Court has held that the FDCPA's statute of limitations is not subject to the discovery rule. *Rotkiski*, 140 S. Ct. at 357 ("We hold that, absent the application of an equitable doctrine, the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered."). *Rotkiskie* therefore forecloses the Woods' argument that the discovery rule applies to their FDCPA claims.

And while equitable tolling could apply, the Woods are not entitled to such extraordinary relief. "The doctrine of equitable tolling preserves a plaintiff's claim when strict application of the statute of limitations would be inequitable." *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998) (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995)). "[E]quitable tolling is a narrow exception . . . that should be applied sparingly." *Sandoz v. Cingular Wireless, L.L.C.*, 700 F.App'x 317, 320 (5th Cir. 2017) (internal quotations omitted). To succeed in an equitable tolling argument, plaintiffs must prove two elements: "1) that [they] ha[ve] been pursuing [their] rights diligently, and 2) that some extraordinary circumstance stood in [their] way and prevented timely filing." *Id*. This standard requires "reasonable diligence," not "maximum feasible diligence." *Starns v. Andrews*, 524 F.3d 612, 618 (5th Cir. 2008). The delay in filing must be due to some "external obstacle to timely filing . . . beyond [the plaintiff's] control," not from self-inflicted delay. *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 755-756, 193 L. Ed. 2d 652

(2016). "The plaintiff has the burden to provide justification for equitable tolling." *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (citations omitted).

Here, the Woods' claims cannot be equitably tolled based on the record presented. Although the Woods diligently pursued their claims and filed their original Complaint within the statute of limitations, their FDCPA claims were dismissed without prejudice for failure to state a claim. [32]. Because the pleadings contained within the original Complaint were wholly within their control, the Woods cannot meet the second prong and equitable tolling is inapplicable. *See Mark v. Spears*, No. 6:18-cv-309, 2019 WL 4008021, at *1 (E.D. Tex. Jul. 30, 2019) ("Because his own actions led to his previous case being dismissed without prejudice, [plaintiff] is not entitled to equitable tolling."); *see also Cox v. Steak N Shake, Inc.*, No. 3:20-cv-61-AME, 2020 WL 3100204, at *3 (S.D. Tex. Jun. 11, 2020).

Since the Woods are not entitled to equitable tolling, they may assert claims against the Defendants for any FDCPA claims arising after February 23, 2020—one year before the filing of the Amended Complaint [45]. *Williams v. Cook*, 264 F.3d 1142 (5th Cir. 2001) ("While the filing of an action normally tolls the statute of limitations, its dismissal without prejudice leaves the plaintiff in the same position as if the action had never been filed."). Thus, the Court must determine whether the Woods have alleged any FDCPA claims arising *after* February 23, 2020, as all claims arising before then are time-barred. The Court will consider each FDCPA claim in turn. *Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 497 (10th Cir. 2010) ("For statute-of-limitations purposes, discrete violations of the FDCPA should be analyzed on an individual basis.").

### i. Section 1692d(5)

In their Amended Complaint [45], the Woods allege that Alliance violated Section 1692d(5) "by ringing Chastity's phone repeatedly with the intent to harass her, including in January and February 2020." [45], ¶ 126(a). While the claims arising in January 2020 are time-barred, to the extent that there are claims arising after February 23, 2020, such claims are permissible. *See Williams*, 264 F.3d at 1142.[12]

### ii. Section 1692g(a)(2)

Chastity alleges that Alliance violated Section 1692(a)(2) "when it failed to timely provide the Woods with the name of the creditor to whom the $8,936.05 debt was owed in October 2019." [45], ¶ 126(j). Because these claims clearly arise before February 23, 2020, they must be dismissed as time-barred. Courts presented with similar issues have come to the same conclusion. *Mark v. Spears*, No. 6:18-cv-309, 2019 WL 4008021, at *1 (E.D. Tex. Jul. 30, 2019) ("[O]nce a lawsuit is dismissed without prejudice, all future suits relate back to the original accrual date as if the first suit had never been filed; consequently, then, if the plaintiff refiles the suit after the expiration of the applicable statute of limitations, the suit is time-barred.").[13]

---

[12] *See also Champ v. Dallas Cnty. Cmty. Coll. District*, No. 3:18-cv-1090-JJB, 2018 WL 3609268, at *2 (N.D. Tex. Jul. 27, 2018) (dismissing claims that occurred before limitations period and allowing plaintiff to file amended complaint relying on facts within the limitations period); *Gruen v. Edfund*, No. 09-cv–00644-JSW, 2009 WL 2136785, at *1 (N.D. Cal. Jul. 15, 2009) ("Plaintiff's FDCPA claim may proceed on the alleged actions that occurred within one year of filing this action.").

[13] *Cox v. Steak N Shake, Inc.*, No. 3:20-cv-61-AME, 2020 WL 3100204, at *3 (S.D. Tex. Jun. 11, 2020) (dismissing claims as time-barred because "[t]he present action is a brand-new lawsuit that cannot relate back to the 2019 Lawsuit, which is considered a nullity since it was dismissed without prejudice."); *see also Keys v. Smith*, No. 2:08-cv-254-KS, 2009 WL 1587106, at *3 (S.D. Miss. Jun. 5, 2009) ("Because the statute of limitations had run at the time the complaint was filed, judgment in favor of the Defendants on these claims is warranted, and the claims will be dismissed with prejudice").

### iii. Section 1692g(a)(4)

According to the Amended Complaint [45], Tupelo Service Finance and Alliance violated Section 1692g(a)(4) "each time they failed to obtain and provide the Woods with verification of a debt after receiving a dispute notice." [45], ¶ 126(k). Although Chastity does not provide any dates relating to these claims in this paragraph, the record reflects that Chastity sent dispute letters in 2018 and 2019. [195-10], pg. 47; [45], ¶ 65. The record also reflects that Chastity verbally disputed the bills in 2018. [221-1], pp. 238-239. Even if the dispute letters were sent in December 2019, those claims would still be barred by the statute of limitations. As discussed above, the Woods may only assert claims against Alliance for any FDCPA claims arising after February 23, 2020—one year before the filing of the Amended Complaint [45]. Because Chastity provides no evidence that such conduct occurred after February 23, 2020, these claims must be dismissed as time-barred. *See Drake v. Fitzsimmons*, No. 3:12–cv–1436-JJB, 2013 WL 775354, at *3 (N.D. Tex. Mar. 1, 2013).

### iv. Section 1692g(b)

In their Amended Complaint [45], the Woods allege that Alliance violated Section 1692g(b) "in January and February 2020 when it failed to cease its attempts at collection and obtain verification of the $8,936.05 debt after receiving a written dispute notice from [Mississippi Insurance Department]." [45], ¶ 126(l). Given the dates alleged, all of the Woods' claims before February 23, 2020, are time-barred. To the extent that there are claims arising after February 23, 2020, the Woods may assert those claims as they are not time-barred.

### v. Section 1692e(2)(A)

The Woods allege that the Defendants violated Section 1692e(2)(A) "by making false representations regarding the legal status of debts each time they represented to the Woods that a

balance bill for an unauthorized and non-allowed amount was legally collectible." [45], ¶ 126(b). Although the Woods do not provide dates for when this conduct occurred, the Woods allege elsewhere in the Amended Complaint that "[i]n 2018 and early 2019, the Defendants made numerous fraudulent representations to the Woods and omitted material facts in their communications with the Woods." [45], ¶ 70. The Woods have not alleged sufficient facts in the Amended Complaint to show such claims fall within the statute of limitations, nor have they presented evidence in response to summary judgment. As a result, these claims must be dismissed as time-barred.

### vi. Section 1692e(10)

Within the Amended Complaint [45], the Woods assert that the Defendants violated Section 1692e(10) "by using false representations and deceptive means to attempt to collect a debt, including telephone calls in March 2019." [45], ¶ 126(f). These claims arise before February 23, 2020, and must be dismissed as time-barred.

### vii. Section 1692f(1)

Finally, the Woods allege that the Defendants violated Section 1692f(1) "by engaging in unfair and unconscionable conduct each and every time they collected or attempted to collect a balance bill for an amount not expressly authorized by the agreement or by relevant law." [45], ¶ 126(i). Again, the Woods do not provide dates for when these alleged violations occurred. But elsewhere in the Amended Complaint, the Woods claim that such conduct took place in "January and March 2018" and "early 2019." [45], ¶ 126(e), ¶ 70. Because such conduct occurred before February 23, 2020, these claims must be dismissed as time-barred.

**C. Merits**

Having determined that the majority of the Woods' FDCPA claims are time-barred, the Court must now proceed to a merits analysis of the remaining FDCPA claims. Accordingly, the Court will consider those claims arising out of Section 1692d(5) and Section 1692g(b) asserted against Alliance and the Section 1692e(4), Section 1692e(5), and Section 1692e(7) claims asserted against the Hospital Defendants. Because the Hospital Defendants move for partial summary judgment on the FDCPA claims arising under Mississippi Code Section 83-9-5, however, for clarity and completeness of this Opinion, the Court will address those arguments along with the Section 83-9-5 arguments.[14]

### i. Whether the Woods' claims under Section 1692d(5) fail as a matter of law

The Woods allege that Alliance "violated Section 1692d(5) when it rang Chastity's telephone repeatedly with the intent to harass her after it was aware of her position, the patient advocate's position, and the Mississippi Insurance Department's position with respect to the illegality of the alleged debts." [228], pg. 26.

Section 1692d(5) prohibits a debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Although most sections of the FDCPA are strict liability provisions, Section 1692d(5) contains an "intent" requirement. 15 U.S.C. § 1692d(5); *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 n. 11 (9th Cir. 2006); *Tyler v. Mirand*

---

[14] The FDCPA claims based on Mississippi Code Section 83-9-5 include: Section 1692e(2)(A), Section 1692e(4), Section 1692e(5), Section 1692e(7), and Section 1692f(1). But because the Court has already found that Section 1692e(2)(A) and Section 1692f(1) are time-barred, the Court will only consider the following FDCPA claims that are based on Mississippi Code Section 83-9-5: Section 1692e(4), Section 1692e(5), and Section 1692e(7).

*Response Sys., Inc.*, No. 18-cv-1095-NFA, 2019 WL 2121301, at \*2 (S.D. Tex. May 15, 2019). The

statute is intended to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §

1692(e). Under this statute, intent to harass "may be inferred from the frequency, pattern, or

substance of the telephone calls that [the debtor] received from the debt collector or the place to

which the calls were made." *Karp v. Fin. Recovery Services, Inc.*, No. A–12–CA–985 LY, 2013 WL

6734110, \*6 (W.D. Tex. Dec. 18, 2013) (collecting cases). "There is no bright line rule as to the

specific amount or pattern of calls sufficient to raise a fact issue regarding the intent to annoy,

abuse, or harass; courts simply disagree on the amount or pattern of calls needed to raise a triable

fact issue." *Id*. Even so, to state a claim under the FDCPA, the plaintiff must still allege facts

sufficient to support a finding of an intent to harass. *Id*.; *Reed v. Receivable Recovery Services, L.L.C.*,

702 F. App'x 239, 241 (5th Cir. 2017).

Alliance argues that the Debtor History Report reflects that only one call was placed to

Chastity's phone number on or after February 23, 2020—the relevant limitations period. [221-1],

pg. 249. Alliance called Chastity's number on February 24, 2020, at 12:15 p.m., and the call went

unanswered. Alliance says the Court should only consider that one call and no calls prior to the

limitations period. But "courts have held that evidence of wrongful acts occurring outside the

statute of limitations may be used to support claims based on acts occurring withing one year before

suit was filed." *Arvie v. Dodeka, LLC*, No. H–09–1076–LHR, 2010 WL 4312907, at \*9 (S.D. Tex.

Oct. 25, 2010) (citing *Padilla v. Payco Gen. Am. Credits, Inc.*, 161 F. Supp. 2d 264, 273 (S.D.N.Y.

2001) ("[T]he statute of limitations is not intended to deprive plaintiffs of the use of evidence of

violations that took place more than a year before filing.")). Therefore, the Court looks not only to

the single call placed within the limitations, but all of Alliance's calls to Chastity to determine Alliance's alleged intent to harass.

The Debtor History Report reveals that from October 11, 2018, to February 24, 2020, Alliance placed twenty-six calls to Chastity, the vast majority of which went unanswered. [221-1], pp. 238-249. In her deposition, Chastity testified that she does not "have any reason to dispute" the calls referenced in the Debtor History Report. [221-1], pg. 61-62. Although the Woods argue that "the Court should find a triable issue of fact exists because" Alliance "continued to call Chastity (including three calls in a single day) after it was aware of her position," this argument fails, as the Court is faced with numerous cases granting summary judgment in far more egregious cases. *Clingaman v. Certegy Payment Recovery Servs.*, 2011 WL 2078629, at *5 (S.D. Tex. May 26, 2011) (finding no FDCPA violation for 55 calls placed over 3 and a half months, with four occurring on one day, and explaining the volume of calls suggests "difficulty reaching Plaintiff, rather than an intent to harass."); *Tucker v. The CBE Grp., Inc.*, 710 F. Supp. 2d 1301 (M.D. Fla. 2010) (finding no FDCPA violation for 57 calls, including seven calls made in one day); *VanHorn v. Genpact Servs., LLC*, 2011 WL 4565477, at * 1 (W.D. Mo. Feb.14, 2011) (finding no FDCPA violation for 114 calls placed in a four-month period, despite calling almost daily); *Carman v. CBE Grp., Inc.*, 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011) (finding no FDCPA violation for 149 calls placed in a two-month period, as "[t]he record is lacking of any indicia of the type of egregious conduct raising issues of triable fact when coupled with a high call volume.").

Courts have held that "[a] remarkable volume of telephone calls is permissible under FDCPA jurisprudence." *Zortman v. J.C. Christensen & Associates, Inc.*, 870 F. Supp. 2d 694, 707 (D. Minn. May 2, 2012) (collecting cases). And the twenty-six calls Alliance placed to the Woods

over a sixteen-month period does not fall into that category. Thus, the Woods' Section 1692d(5) claims must be dismissed.

### ii. Whether the Woods' claims under Section 1692g(b) fail as a matter of law

Here, the Woods allege that Alliance violated Section 1692g(b) by failing to cease collection activity after receiving "a written dispute notice from the [Mississippi Insurance Department]." [45] ¶ 126(l). Alliance argues that Chastity did not appropriately dispute the debts because a Mississippi Insurance Department agent contacted Alliance, rather than Chastity contacting Alliance directly as required by the statute. Although this argument was first raised in Alliance's Reply [237] brief, "a district court may consider arguments and evidence raised for the first time in a reply brief without abusing its discretion 'so long as it gives the non-movant an adequate opportunity to respond to a prior ruling.'" *RedHawk Holdings Corp. v. Schreiber Trustee of Schreiber Living Tr.*, 836 F. App'x 232, 235 (5th Cir. 2020) (citations omitted). Indeed, "a district court abuses its discretion only when it both denies a party leave to file a surreply and relies on new materials or arguments in the opposing party's reply brief." *RedHawk*, 836 F. App'x at 236 (citing *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1191–92 (10th Cir. 2006) (finding that because the plaintiff did not request leave to file a surreply, the district court did not abuse its discretion in considering the new arguments within the defendant's reply brief).

Pursuant to this authority, the Court entered an Order [238] sua sponte granting the Woods' leave to file a sur-reply as to this argument by September 8, 2023. The Woods timely filed their sur-reply arguing that "a representative of the [Mississippi Insurance Department] contacted [Alliance] at the request of the [Woods] and was acting on Chastity's behalf when he communicated the dispute to Alliance." [239], pg. 5. According to the Woods, a third party acting

on a consumer's behalf may send a dispute letter to a debt collector. In support of their argument, the Woods rely on *Sayles v. Advance Recovery Sys., Inc.*, 206 F. Supp. 3d 1210, 1213 n.4 (S.D. Miss. 2016), for the proposition that as long as the letter was drafted per the consumer's request and sent on the consumer's behalf, it is a proper dispute letter under Section 1692g(b).

Accordingly, the question before the Court is two-fold: (1) whether Section 1692g(b) requires a "consumer" to communicate the dispute themselves, or (2) whether a third party, such as the Mississippi Insurance Department, disputing the debt is sufficient under the statue. In conducting this analysis, the Court turns to the text of the statute which provides:

> If the *consumer* notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the *consumer* requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the *consumer* has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the *consumer* requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C.A. § 1692g(b) (emphasis added).

Although the Woods argue in their sur-reply that the letter from the Mississippi Insurance Department sent on Chastity's behalf was a proper dispute letter pursuant to *Sayles*, the Court disagrees.[15] As defined by Section 1692a, "the term 'consumer' means any natural person

---

[15] In *Sayles*, the plaintiff's attorney prepared a letter on the plaintiff's behalf. Critically, the plaintiff signed it and the letter was sent to the debt collector to dispute the debt. *Sayles v. Advance Recovery Sys., Inc.*, 206 F. Supp. 3d 1210, 1213 n.4 (S.D. Miss. 2016). Here, however, the letter was signed by Ryan Blakeney of the Mississippi Insurance Department, not Chastity. Additionally, the letter does not state that it was sent on Chastity's behalf. Instead, the letter uses language such as "it is [Mississippi Insurance Department's] position that Alliance Collection Services,

obligated or allegedly obligated to pay any debt." 15 U.S.C.A. § 1692a. Clearly, the Mississippi Insurance Department is not obligated or even allegedly obligated to pay Chastity's debt—and the Woods have made no such argument. Because Section 1692g(b) requires "disputes" to be communicated to the debt collector by the *consumer*, the email from the Mississippi Insurance Department to Alliance does not qualify as a "written dispute." *See Warner v. Experian Info. Solutions, Inc.*, 931 F.3d 917, 921 (9th Cir. 2019) (finding that although consumer hired third party to send dispute letters on his behalf, "he did little else," and the dispute letters therefore did not come directly from the consumer); *see also Turner v. Experian Info. Solutions, Inc.*, No. 3:16-cv-630-JZ, 2017 WL 2832738, at *8 (N.D. Ohio Jun. 30, 2017) (holding that because the dispute letter was sent by a third party on the consumer's behalf, the consumer did not notify Experian of a dispute "directly" because "[s]he did not draft the dispute letter, provide documentation supporting its claims, review its accuracy, sign it, or mail it"). This claim is therefore dismissed.

### iii. FDCPA claims based on Mississippi Code Section 83-9-5

The Hospital Defendants argue that all FDCPA claims based on the balance bills being impermissible under Section 83-9-5 must be dismissed. These claims include: Section 1692e(2)(A), Section 1692e(4), Section 1692e(5), Section 1692e(7), Section 1692f(1). The Court has already found the following claims are time-barred: Section 1692e(2)(A) and Section 1692f(1).

---

Inc. cannot balance bill [Chasity] for services that it provided." [239-1], pg. 2. And the "[Mississippi Insurance Department] requests that Alliance waive the remaining balance on [Chastity's] account." *Id.* For these reasons, the Court finds *Sayles* distinguishable and inapplicable to this case.

The Court also finds the Woods' reliance on *Bartl v. Enhanced Recovery Co., LLC*, No. 16-cv-252-JNE, 2017 WL 1740152 (D. Minn. May 3, 2017) is unpersuasive. There, the court found that because a third party sent a letter to the debt collector on the consumer's behalf, that the "letter qualifies as a dispute letter for purposes of Section 1692g(b)." Apart from citing to *Sayles*, the court provides no additional analysis or reasoning to support its diversion from the plain language of the statute. For these reasons, this Court declines to adopt the reasoning found in *Bartl*.

Accordingly, for the purposes of this analysis, the only FDCPA claims remaining against the Hospital Defendants are: Section 1692e(4), Section 1692e(5), and Section 1692e(7).[16] Because these claims are premised on Mississippi Code Section 83-9-5, the Court finds it prudent to consider them within the Section 83-5-9 analysis below.

## IV. STATE LAW CLAIMS

The Woods assert a number of state law claims against Alliance and the Hospital Defendants, including statutory violation claims based on Mississippi Code Section 83-9-5, fraud and misrepresentation, breach of contract, and civil conspiracy. This Court has jurisdiction over the Woods' state law claims, and considers each in turn. 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.").

The Court begins with the Woods' statutory violation claim based on Mississippi Code Section 83-9-5 and finds that it should be dismissed for two reasons, (1) Section 83-9-5 does not create a private right of action, and (2) even if it did, Section 83-9-5 would not apply to Alliance or the Hospital Defendants and therefore does not prohibit them from balance billing. In short, the

---

[16] The Hospital Defendants do not seek summary judgment on the breach of contract claims asserted against them, including those FDCPA claims arising out of the alleged breach of contract. According to the Hospital Defendants, the only FDCPA claims based on breach of contract are Section 1692e(10) and Section 1692g(a)(2). [224], pg. 20. In the Woods' Response [231], they do not dispute the Hospital Defendants' characterization of their FDCPA claims premised on breach of contract. Thus, even if the Woods did assert other FDCPA claims based on breach of contract in their Amended Complaint, such arguments have been abandoned. *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding claim abandoned when plaintiff failed to defend it in response to motion to dismiss); *Scales v. Slater*, 181 F.3d 703, 708 n.5 (5th Cir. 1999) (holding plaintiff abandoned claim by failing to contest defendant's arguments for dismissal of that claim). Because the Woods' Section 1692e(10) and Section 1692g(a)(2) claims have been dismissed as time-barred, no FDCPA claims based on breach of contract remain.

Court finds that Section 83-9-5 is inapplicable to this action and the Woods' FDCPA claims premised on Section 83-9-5's alleged prohibition of balance billing must fail.

With no federal claims remaining, the Court could refuse to exercise supplemental jurisdiction and dismiss the remaining state law claims without prejudice. The Court declines to do so. Although "no single factor is dispositive" when considering whether to retain supplemental jurisdiction, or not, the Fifth Circuit has held that the likelihood that a plaintiff's state law claims will be dismissed as time-barred in state court is a factor—"if not a determinative factor, the district court should consider in deciding whether to maintain jurisdiction over pendent state claims." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).[17] Upon consideration of the factors, particularly judicial economy and that the Woods would likely face statute of limitations issues if forced to refile in state court, the Court exercises its broad discretion in retaining supplemental jurisdiction over the Woods' remaining state law claims.

The Court then considers the Woods' fraud and misrepresentation claims, which are based on two separate theories of liability—balance billing as allegedly prohibited by Mississippi Code Section 83-9-5 and Chastity's Plan, and the tax time deal. Because the Court has dismissed the Woods' balance billing claims based on Mississippi Code Section 83-9-5, the Woods' fraud and misrepresentation claims based on the same must be dismissed in their entirety. The Court also finds that the Woods' fraud and misrepresentation claims based on the tax time deal must be dismissed against Alliance, but will remain against the Hospital Defendants as they did not move for summary judgment on these claims.

---

[17] *Henson v. Columbus Bank and Tr. Co.*, 651 F.2d 320, 325 (5th Cir. 1981) (citation omitted); *United States ex rel. Jackson v. University of N. Texas*, No. 4:13-cv-734-ALM, 2015 WL 13744208, at *6 (E.D. Tex. Nov. 18, 2015) (retaining supplemental jurisdiction over state law claims where claims would be time-barred in state court).

Next, the Court considers the Woods' breach of contract claim against Alliance, as the Hospital Defendants did not move for summary judgment on this claim. The Court finds that the Woods did not allege any facts supporting a breach of contract claim against Alliance, and that this claim must be dismissed.

Finally, the Court finds that the Woods' civil conspiracy claims are derivative of their statutory violation claims, FDCPA claims, and breach of contract claims. Because a civil conspiracy claim cannot stand alone, the Court finds that all of the Woods' civil conspiracy claims against Alliance must be dismissed. The Court also finds that only the Woods' civil conspiracy claims based on breach of contract will proceed against the Hospital Defendants.

Having summarized its findings, the Court will now turn to the Woods' state law claims.

## A. Violation of Mississippi Code Section 83-9-5

The Woods argue that the "balance bills the Defendants collected or attempted to collect" were "not allowed under relevant Mississippi law." [45], ¶ 94. According to the Woods, Mississippi Code Section 83-9-5 prohibits balance billing—which occurs when providers bill a patient for the difference between the amount they charge, and the amount the patient's insurance approves and actually pays. More specifically, the Woods assert that Section 83-9-5 prohibits the collection of amounts "other than the deductible, coinsurance, copayment or other charges for equipment or services requested by the insured that are noncovered benefits." [45], ¶ 96. The Hospital Defendants and Alliance argue, however, that Section 83-9-5 does not contain such a requirement. They assert that Section 83-9-5 simply requires insurers to include certain provisions in their contracts, and nothing more.

30

The questions before the Court, then, are three-fold: (1) whether Section 83-9-5 provides a private right of action; (2) whether Section 83-9-5 requires the Defendants to act, or refuse to act; and (3) whether the Defendants committed an act of negligence *per se* each time they collected or attempted to collect a balance bill from the Woods.

### i. Whether Section 83-9-5 provides a private right of action

Alliance and the Hospital Defendants argue that Section 83-9-5 does not provide a private right of action at all—much less against health care providers or collection agencies that are not parties to the underlying insurance policies. The Woods, however, argue that Section 83-9-5 provides an implied right of action against the Defendants. [229], pg. 16. Upon review, the Court disagrees and finds that Section 83-9-5 does not provide an express or an implied private right of action.

### a. Textual analysis

The question before the Court is whether Section 83-9-5(1)(i) provides a private right of action. To answer that question, the Court begins "'where all such inquiries must begin: with the language of the statute itself.'" *Republic of Sudan v. Harrison*, 587 U.S. ----, 139 S. Ct. 1048, 1056, 203 L. Ed. 2d 433 (2019) (quoting *Caraco Pharm. Laboratories, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 412, 132 S. Ct. 1670, 182 L. Ed. 2d 678 (2012)). Section 83-9-5(1)(i) is enrolled as part of Mississippi's laws regulating accident, health, and Medicare supplement insurance. That subsection is a portion of the statute specifying certain policy provisions that must be included in "each such [insurance] policy delivered or issued for delivery to any person in this state[.]" MISS. CODE ANN. § 83-9-5. Section 83-9-5(1)(i) provides, in relevant part, that a provision must be included in each insurance policy that states:

. . . If the insured provides the insurer with written direction that all or a portion of any indemnities or benefits provided by the policy be paid to a licensed health care provider rendering hospital, nursing, medical or surgical services, then the insurer shall pay directly the licensed health care provider rendering such services. That payment shall be considered payment in full to the provider, who may not bill or collect from the insured any amount above that payment, other than the deductible, coinsurance, copayment or other charges for equipment or services requested by the insured that are noncovered benefits. Any dispute between a provider and the insured arising under these provisions regarding assignment of benefits and billing may be resolved by the Commissioner of Insurance. The Commissioner of Insurance shall adopt any rules and regulations necessary to enforce these provisions regarding assignment of benefits and billing.

MISS. CODE ANN. § 83-9-5(1)(i).

Here, Section 83-9-5(1)(i), unlike other sections within the Mississippi Insurance Code, is silent as to civil liability. *See* MISS. CODE ANN. § 83-9-5(1)(h)(4); § 83-9-6(6). "[I]t is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" *Rotkiske v. Klemm*, --- U.S. ---, 140 S. Ct. 355, 205 L. Ed. 2d 291, (2019) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts, pg. 94 (2012)). To do so "'is not a construction of a statute, but, in effect, an enlargement of it by the court.'" *Id.* (quoting *Nichols v. United States*, 578 U.S. ----, ----, 136 S. Ct. 1113, 1118, 194 L. Ed. 2d 324 (2016)). Thus, it is clear from the text that no express private right of action exists.

Despite the clear absence of an express private right of action on the face of the statute, the Woods argue that the private right of action is implied. Under Mississippi law, "'[t]he general rule for the existence of a private right of action under a statute is that the party claiming such right must establish a legislative intent, express or implied, to impose liability for violations of that statute.'" *Hobson v. Chase Home Fin., LLC*, 179 So.3d 1026, 1031 (Miss. 2015) (quoting *Tunica Cnty v. Gray*, 13 So.3d 826, 829 (Miss. 2009)). While deciding whether a private right of action is implied is a less straightforward inquiry, "the text of the statute remains paramount." *Green Valley*

*Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460, 498 (5th Cir. 2020) (Oldham, J. concurring) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001)). "No matter how the cause-of-action inquiry proceeds—explicitly or implicitly—the Congressionally-enacted text remains the lodestar." *Green Valley Special Util. Dist.*, 969 F.3d at 498. Indeed, "a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*.'" *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002) (quoting *Alexander*, 532 U.S. at 286).

Here, the Woods argue that a "consumer protection mandate exists," thus creating an implied right of action. [229], pg. 16. According to the Woods, this consumer protection mandate exists because Section 83-9-5 provides that, "[a]ny dispute between a provider and the insured arising under these provisions regarding assignment of benefits and billing may be resolved by the Commissioner of Insurance." MISS. CODE ANN. § 83-9-5(1)(i). The Woods argue that "failure to provide an express enforcement mechanism[] leads to the untenable conclusion that the legislature intentionally passed an amendment no provider would ever be compelled to abide, and no patient could ever enforce." [229], pg. 16. Unfortunately for the Woods, that is the exact conclusion the Court rests upon. A plain reading of the text reveals that Section 83-9-5(1)(i) simply requires health insurers to add specific provisions in their policies regarding indemnity and loss of life. There is no reading of the text that reveals an intent to provide a private right of action, whether express or implied.

Although the plain reading of the statute is clear that there is no express or implied right of action, the Woods nevertheless argue that the *purpose* of the statute gives rise to an implied right

of action. "Assuming *argudeno* that [courts] can look to the purpose of the statute," the Court will do so. *United States v. Nazerzadeh*, 73 F.4th 341, 347 (5th Cir. 2023).

### b. Subject matter and context of the text

When deciding an issue governed by the text of a statute, the Court must keep in mind that "words are given their meaning by their context, and context includes the purpose of the text." A. Scalia and B. Garner, Reading Law: The Interpretation of Legal Texts, pg. 56 (1989). "The subject matter of the document (its purpose, broadly speaking) is the context that helps to give words meaning." Reading Law, pg. 56.

Looking to the context, or purpose, of Section 83-9-5, the Court must be mindful that "*the purpose must be derived from the text*, not from extrinsic sources such as legislative history or an assumption about the legal drafter's desires." *Id.* (emphasis added). Indeed, courts are "reluctant to rely on legislative history for the simple reason that [it is] not law." *United States v. Nazerzadeh*, 73 F.4th 341, 347 (5th Cir. 2023) (citation omitted). When courts consider the purpose of the text in this manner, "purpose must be defined precisely." *Id.* And "as concretely as possible." *United States v. Sharp*, 62 F.4th 951, 953 (5th Cir. 2023). In fact, purpose is "relevant 'only on deciding which of various *textually permissible meanings* should be adopted.'" *Sharp*, 62 F.4th at 953 (quoting Reading Law, at 56–57). With these considerations in mind, the Court now turns to the purpose of Section 83-9-5, as derived from the text.

To begin, the Court considers the amendments to Section 83-9-5 since its enactment—specifically the 2013 and 2020 amendments. In 2013, the statute was amended to include, among other things, language requiring insurance companies to include certain policy provisions in all insurance policies issued in Mississippi. 2013 Miss. Laws Ch. 302 (H.B. 374). Section 83-9-5 was

amended again in 2020 "to provide that *the commissioner of insurance* may resolve certain disputes between health care providers and insureds." 2020 MS H.B. 95 (NS) (emphasis added). With this amendment, the statute now provides that "[a]ny dispute between a provider and the insured arising under these provisions regarding assignment of benefits and billing may be resolved by the Commissioner of Insurance. The Commissioner of Insurance shall adopt any rules and regulations necessary to enforce these provisions regarding assignment of benefits and billing." MISS. CODE ANN. § 83-9-5(1)(i).

According to the Woods, the 2013 amendment was "solely for the purpose of eliminating abusive balance billing." [229], pg. 14. In fact, the Woods submit that the 2020 amendment "clarifies the intent of the 2013 amendment by acknowledging conflicts between providers and patients will arise as a result of its provisions. The contemplation of such conflicts makes clear the intent of the 2013 amendment was to restrain providers and, by extension and application of the FDCPA, their debt collectors." *Id.* at pg. 16. The Woods assert that "[a]lthough the 2020 amendment also added a governmental enforcement option, it did not suggest that a private right of enforcement was unavailable." *Id.* at pg. 16. Despite this mandate being found within a section that "addresses the content of policies, as opposed to the conduct of providers," it is the Woods' position that "[i]f the Court finds a consumer protection mandate exists, it should find a right of action is implied." *Id.*

Alliance and the Hospital Defendants disagree with the Woods' statutory interpretation. Specifically, the Hospital Defendants assert that "there is no dispute that the 2020 amendment of § 83-9-5(1)(i) assigned referee duties over disputes arising under the statute to the Commissioner of Insurance, not the Mississippi judiciary, as it did in § 83-9-5(1)(h)(4)." [236], pg. 11. They also

argue that "when deciding to amend § 83-9-5(1)(i), the Legislature could have authorized an explicit private right of action, as the Legislature was certainly willing to do in the past." *Id.* (citing MISS. CODE ANN. § 83-9-5(1)(h)(4) ("In the event the insurer fails to pay benefits when due, the person entitled to such benefits may bring action to recover such benefits")). "However, it chose not to." *Id.*

The Court agrees with the Hospital Defendants' characterization, as "the limitations of a text—what a text chooses *not* to do—are as much a part of its 'purpose' as its affirmative dispositions. These exceptions or limitations must be respected, and the only way to accord them their due is to reject the replacement or supplementation of text with purpose." Reading Law, pp. 57-58. Unlike Section 83-9-6 within the Mississippi Insurance Code, Section 83-9-5(1)(i) does not provide for a private right of action. And the Court must consider the silence of Section 83-9-5(1)(i) as to civil liability dispositive. *See Gozlon—Peretz v. United States*, 498 U.S. 395, 404, 111 S. Ct. 840, 112 L. Ed. 2d 919 (1991) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

And while the Woods argue that the Court should find that the purpose of Section 83-9-5(1)(i) gives rise to an implied right of action through the alleged "consumer protection mandate," their argument is unpersuasive. The Woods rely solely on the language that "[a]ny dispute between a provider and the insured arising under these provisions regarding assignment of benefits and billing may be resolved by the Commissioner of Insurance." MISS. CODE ANN. § 83-9-5(1)(i). But their own briefing acknowledges their argument's fatal flaw. The Woods assert that "[a]lthough the 2020 amendment also added a governmental enforcement option, it did not

suggest that a private right of enforcement was unavailable." [229], pg. 16. The problem with the Woods' argument is that the statute also does not suggest that a private right of action *is available*. While the language the Woods rely upon recognizes that *contractual* disputes may arise regarding assignment of benefits and billing, there is nothing in the text recognizing, or even suggesting, that a *statutory* right of action is available. *Marlow, L.L.C. v. BellSouth Telecomms., Inc.*, 686 F.3d 303, 307 (5th Cir. 2012) ("In Mississippi, '[t]he primary rule of construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein.'") (quoting *DePriest v. Barber*, 798 So. 2d 456, 458 (Miss. 2001)).

Finally, the Woods ask the Court to become a policymaker and find that the statute's intent is to "end abusive balance billing," but it is not for this Court "to decide what a statute *should* provide, but to determine what it does provide." *Smith v. Webster*, 233 So. 3d 242, 247 (Miss. 2017) (emphasis added). Section 83-9-5 is entitled "Mandatory policy provisions" and is enrolled as part of Mississippi's laws regulating accident, health, and Medicare supplement insurance. Even the Woods themselves acknowledge that Section 83-9-5(1)(i) "addresses the *content* of policies, as opposed to the conduct of providers." [229], pg. 16 (emphasis added). Pursuant to the text of the statute, there is no "'legislative intent, express or implied, [that] impose[s] liability for violations of [this] statute.'" *Hobson*, 179 So.3d at 1031 (quoting *Tunica Cnty*, 13 So.3d at 829).

As a result, the only "*textually permissible meaning*" is that no express or implied private right of action exists under Section 83-9-5(1)(i) to sue health care providers or debt collectors for alleged balance billings. *Sharp*, 62 F.4th at 953 (quoting Reading Law, at 56–57).

**ii. Even if Section 83-9-5 did provide a private right of action, it would not apply to these Defendants**

As discussed above, Section 83-9-5 is enrolled as part of Mississippi's laws regulating policies and contracts of accident, health, and Medicare supplement insurance. By its plain language, Section 83-9-5 requires insurers, such as health maintenance organizations and insurance companies, to include certain policy provisions in each policy or contract of accident and sickness insurance issued in the state of Mississippi. MISS. CODE ANN. § 83-9-5(1). For example, insurers must include, among other things, the following language within each policy or contract of accident and sickness insurance: "payment shall be considered payment in full to the provider, who may not bill or collect from the insured any amount above that payment, other than the deductible, coinsurance, copayment or other charges for equipment or services requested by the insured that are noncovered benefits." *Id.* The Woods argue that this mandate prohibits the Hospital Defendants from balance billing and Alliance from collecting such balance bills. The Court disagrees.

At its core, Section 83-9-5 simply mandates insurers to include certain policy language within all policies and contracts of accident and sickness insurance issued in the state of Mississippi. Unfortunately for the Woods, Alliance and the Hospital Defendants are not insurers as defined by the statute. Alliance is a debt collector. The Hospital Defendants are medical providers. None of these Defendants are health maintenance organizations or insurance companies "responsible for the payment of benefits under a policy of contract of accident and sickness insurance." MISS. CODE ANN. § 83-9-5(1). Accordingly, the statute cannot—and does not—

prohibit the Hospital Defendants from balance billing under the statute or Alliance from collecting those balance bills.[18]

### iii. Violation of statutory law/negligence *per se*

This Court has determined that Section 83-9-5 does not create a private right of action. Therefore, "an alleged violation of said statute will not provide a basis for a claim of negligence per se." *Isgett By and Through Isgett v. Wal-Mart Stores, Inc.*, 97 F. Supp. 422, 430 (S.D. Miss. 1997) (citing *Miller v. E.I. DuPont de Nemours and Company*, 880 F. Supp. 474, 480 (S.D. Miss. 1994) ("[S]ince Congress did not intend to create a private right of action under [the Federal Insecticide, Fungicide and Rodenticide Act], then any alleged violation of that statute by (private) defendant cannot provide a basis for a negligence per se claim.")). Therefore, the Woods' negligence *per se*/violation of statutory law claim must be dismissed.

### iv. Remaining FDCPA claims based on Section 83-9-5

Having determined that Section 83-9-5 does not provide a private right of action and does not prohibit the Defendants from balance billing, the Court now turns to the remaining FDCPA claims—Section 1692e(4), Section 1692e(5), and Section 1692e(7)—which are premised on Section 83-9-5. The Hospital Defendants argue that because "the statute is unenforceable, the above FDCPA claims that rely on the statute fail and must be dismissed." [224], pg. 19. The Court agrees, and provides its reasoning below.

Under Section 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." This includes "[t]he representation or implication that nonpayment of any debt will result in the arrest or imprisonment

---

[18] To be clear, this analysis focuses solely on the Woods' balance billings claims based on Section 83-9-5—not based on breach of contract.

of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." 15 U.S.C.A. § 1692e(4). And "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." *Id.* at § 1692e(5). As well as "[t]he false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer." *Id.* at § 1692e(7).

Pursuant to these prohibitions, the Woods allege that the Hospital Defendants violated the FDCPA, specifically Section 1692e(4), by "implying the Woods' failure to pay a balance bill for an unauthorized and non-allowed amount was legally collectable." [45], ¶126(c). The Woods further allege that the Hospital Defendants violated Section 1692e(5) "by threatening the Woods with garnishment, account placement with additional collection agencies, and credit bureau reporting if balance bills for unauthorized and non-allowed amounts were not paid." [45], ¶ 126(d). Finally, the Woods allege the Hospital Defendants violated Section 1692e(7) "by implying that the Woods committed disgraceful conduct when suggesting that the Woods 'forgot' to pay their debts and then chastising them to 'do what is right' by paying balance bills for unauthorized and non-allowed amounts." [45], ¶ 126(e). In sum, the Woods argue that these balance bills were prohibited by Section 83-9-5 and were therefore unauthorized and non-allowed.

The Woods' argument is without merit. This Court has already determined that Section 83-9-5 does not provide an express or implied private right of action to sue health care providers or debt collectors for alleged balance billings, and that Section 83-9-5 does not apply to health care providers or debt collectors. Accordingly, the Woods' FDCPA claims premised on Section 83-9-5

must fail. The Woods' remaining FDCPA claims arising under Section 1692e(4), Section 1692e(5), and Section 1692e(7) are dismissed. [19]

## B. Fraud and misrepresentation

To recover under a theory of fraudulent misrepresentation, a plaintiff must prove: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. *Holland v. Peoples Bank & Tr. Co.*, 3 So. 3d 94, 100 (Miss. 2008); *Hobbs Auto., Inc. v. Dorsey*, 914 So. 2d 148, 153 (¶ 18) (Miss. 2005) (citation omitted).

The Woods' fraud and misrepresentation claims against Alliance and the Hospital Defendants can be divided into two categories: (1) those claims based on Mississippi Code Section 83-9-5 and balance billing and (2) those claims based on the tax time deal.

### i. Balance billing

The Hospital Defendants argue that the balancing billing claims premised on Section 83-9-5 should be dismissed because the statute is unenforceable. [224], pg. 18. The Court agrees, for the reasons already said, and such fraud and misrepresentation claims asserted against the Hospital Defendants and Alliance to the extent there are such claims, are dismissed.

---

[19] The Hospital Defendants assert that the only FDCPA claims based on breach of contract are Section 1692e(10) and Section 1692g(a)(2). [224], pg. 20. The Woods do not dispute the Hospital Defendants' characterization of the FDCPA claims premised on breach of contract in their Response [231]. Thus, even if the Woods did assert other FDCPA claims based on breach of contract in their Amended Complaint, such arguments have been abandoned. *Black*, 461 F.3d at 588 n.1; *Scales*, 181 F.3d at 708 n.5. Because the Woods' Section 1692e(10) and Section 1692g(a)(2) claims have been dismissed as time-barred, no FDCPA claims remain against the Hospital Defendants or Alliance.

### ii. Tax time deal

To begin, the Hospital Defendants do not move to dismiss the fraud and misrepresentation claims asserted against them based on the alleged tax time deal. Accordingly, the Court's analysis focuses solely on Alliance's argument surrounding these claims.

Alliance argues that the "tax time deal" offered to the Woods came from the Hospital Defendants,[20] not Alliance and that this claim must be dismissed. But in the Woods' Response [228] to Alliance's Motion, they do not address this argument—which is supported by the Hospital Defendants' statement that "[i]n March of 2019, *Hospital Defendants* presented the Woods a 'tax time deal.'" [223], pg. 4 (emphasis added). Instead, the Woods refer the Court to prior briefing, but provide no record citations demonstrating a triable issue of fact. In fact, the Woods make no argument that Alliance made any representation to them whatsoever.

Rather, the Woods direct the Court to pages 15 and 16 in their Memorandum in Support [129] of their second motion for discovery. There, the Woods argue that Alliance knew they were collecting non-allowed amounts. Specifically, that "after [Alliance] has supposedly 'validated' the debt, it learned the balance on Chastity's accounts was owed because the Plan was out of network and it was [North Mississippi Medical Center, Inc.] policy not to negotiate with any out of network plan or plan participant. . . . As a result, regardless of what [Alliance] believed it was collecting at the outset, it knew before the close of 2018 that it was attempting to collect non-allowed amounts." [129], pg. 15. The remainder of pages 15 and 16 discuss the conduct of the Hospital Defendants.

Without more, the Woods do not plead the specific facts required to meet their burden. Indeed, there are no allegations anywhere within the Amended Complaint, or the briefing

---

[20] The Amended Complaint explains the "tax time deal" as an offer to receive a limited-time 20% discount on the amount owed, but only if the Woods agreed to pay their debt before April 1, 2019. [45], pg. 7.

provided, that Alliance made the "tax time deal," or any other representation for that matter, rather than the Hospital Defendants. In fact, there is no specific representation from Alliance that was relied on by the Woods. When, as here, a defendant moves for summary judgment based on the failure of plaintiff to produce any evidence on an essential element of plaintiff's claim on which plaintiff bears the burden of proof, it is sufficient for a defendant to point to the absence of proof of the essential element to meet its summary judgment burden with respect to that claim. A defendant need not produce its own evidence demonstrating the absence of a genuine issue of material fact with respect to that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986). Therefore, the Woods' fraud and misrepresentation claims against Alliance are dismissed.

## C. Breach of contract

The Woods assert that before Chastity received treatment at North Mississippi Medical Center, Chastity "was required to present a card proving entitlement to coverage under an insurance policy or health plan." [45], ¶ 26. Chastity presented an employee benefits card, which "alerted [North Mississippi Health Services, North Mississippi Clinics, and North Mississippi Medical Center] that the Plan would only consider an assignment of benefits 'valid under the condition that the Provider accepts the payment received from the Plan as consideration in full,' less any deductible, copayment, coinsurance or charge for non-covered services." [45], ¶ 86. Pursuant to this clause, and others, the Woods argue that Chastity's Plan prohibits balance billing.

Because the employee benefits card Chastity presented was accepted, the Woods argue that a contract was created between North Mississippi Health Services, including North Mississippi Clinics and North Mississippi Medical Center, and the Plan. According to the Woods,

43

this alleged contract arose "when [North Mississippi Health Services, North Mississippi Clinics, and North Mississippi Medical Center] used an assignment of benefits to obtain payments from the Plan, and accepted the payments pursuant to the express terms, conditions and limitations contained in the Plan Documents." [45], ¶ 88. The Woods allege they are "intended third-party beneficiaries of the contract between the [North Mississippi Health Services, North Mississippi Clinics, and North Mississippi Medical Center] and the Plan, a contract the Defendants breached when they collected and attempted to collect balance bills from the Woods," as prohibited by Chastity's Plan. *Id.* at ¶ 91.

The Hospital Defendants do not move to dismiss the breach of contract claims asserted against it and those claims will proceed.

Alliance argues, however, that "a breach-of-contract claim cannot be validly asserted against a third-party like Alliance with whom the Woods did not contract." [222], pg. 31. The Court agrees, as "[i]t goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House*, Inc., 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002); *Adams v. Greenpoint Credit, LLC*, 943 So. 2d 703 (Miss. 2006) ("In order for the third person beneficiary to have a cause of action, the contracts *between the original parties* must have been entered for his benefit") (emphasis added). Nowhere in the Amended Complaint [45] do the Woods claim that Alliance was a party to the underlying contract between the Hospital Defendants and the Plan. Instead, it is clear from the allegations that this contract was between "the Providers and the Plan." [45], ¶ 88. Without any facts or allegations supporting a breach of contract claim against Alliance, the Court finds that such a claim must be dismissed. *Celotex Corp.*, 477 U.S. at 323.

**D. Civil conspiracy claims**

"Under Mississippi law, the elements of a civil conspiracy are: '(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result.'" *Rex Distrib. Co., Inc. v. Anheuser-Busch*, LLC, 271 So. 3d 445, 455 (Miss. 2019) (citation omitted). The Woods allege a number of conspiracy claims against Alliance and the Hospital Defendants, including: (1) that the Defendants conspired together to avoid the contractual payment limitations to which the Providers agreed when they accepted Chastity as a patient; (2) that the Defendants conspired together to violate Mississippi law and public policy, avoid their duty to validate debts, ignore their obligation to only pursue legally collectible amounts; and (3) that the Defendants conspired together to use abusive, deceptive, unfair and unconscionable debt collection practices when attempting to collect illegal balance bills from the Woods. Upon review, all of the Woods' conspiracy claims against Alliance, and some of their conspiracy claims against the Hospital Defendants, do not meet the second element and must be dismissed. The Court will address each claim in turn.

To begin, the Woods' first conspiracy claim fails under the second element because the Woods' breach of contract claim against Alliance has been dismissed. With no underlying breach of contract claim remaining, Alliance could not have agreed to "accomplish an unlawful purpose" by avoiding "the contractual payment limitations to which the Providers agreed when they accepted Chastity as a patient." In other words, the Woods' first conspiracy claim is derivative of Woods' breach of contract claims. And it is well-settled that if a plaintiff fails to allege a separate underlying claim that passes Rule 12(b)(6) scrutiny, then a claim for civil conspiracy necessarily

fails. *MultiPlan, Inc. v. Holland*, 937 F.3d 487, 496 (5th Cir. 2019) (affirming district court's dismissal of civil conspiracy claim where summary judgment was granted on underlying breach of contract claim); *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007). Accordingly, the Woods' first civil conspiracy claim *against Alliance* must be dismissed, as a civil conspiracy claim cannot stand alone. *Wells v. Shelter Gen. Ins. Co.*, 217 F. Supp. 2d 744, 755 (S.D. Miss. 2002). But the Hospital Defendants have not moved to dismiss this civil conspiracy claim, and it therefore remains. [224], pg. 20.

Similarly, the Woods' second and third conspiracy claims also fail under the second element, as they are derivative of their statutory violation claims and their FDCPA claims—which the Court has dismissed in their entirety. Indeed, the Defendants did not agree to "accomplish an unlawful purpose" by violating Mississippi law because the Court has determined the Defendants did not violate Mississippi Code Section 83-9-5, at least in terms of any statutory liability. Likewise, the Court found no FDCPA violations based on the facts alleged. Thus, the Defendants did not agree to "accomplish an unlawful purpose" by using "abusive, deceptive, unfair and unconscionable debt collection practices." *Highland Crusader Offshore Partners LP v. LifeCare Holdings Inc.*, 377 F. App'x 422 (5th Cir. 2010) (affirming—in an unpublished opinion—summary judgment on a district court's dismissal of a conspiracy claim where summary judgment was properly granted as to the underlying claim). For these reasons, the Woods' second and third conspiracy claims against Alliance and the Hospital Defendants are dismissed.

## V. CLASS CERTIFICATION ANALYSIS

Having first investigated the underlying claims, the Court now turns to the Woods' Motion to Certify Class. *Chavez*, 957 F.3d at 545. The Woods bring the instant action on behalf of

themselves and as a class action, under Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2). In the Amended Complaint, the Woods assert that they bring this action on behalf of "a class of similarly situated persons, consisting of all current and former patients of the Providers, who were illegally balanced billed and then subjected to the unfair and unconscionable debt collection practices of the Defendants during the applicable statute of limitations." [45], ¶ 140. The Hospital Defendants argue that the Court should decline to certify the proposed class because the Woods fail to meet their burden under Rule 23.[21] The Court will consider the prerequisites set forth in Rule 23(a) and will then determine whether the Woods have satisfied the requirements in Rule 23(b)(1) and (2).

## A. Standard for class action certification

A plaintiff bears the burden of demonstrating that a lawsuit should proceed as a class action by affirmatively demonstrating compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). Although the decision to certify a class is within the broad discretion of the district court, such discretion must be exercised within the framework of Rule 23. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100-01 (1981)). When deciding whether to certify a class action, the court must undertake a "*rigorous* analysis" to ensure that the putative class and its proposed representative satisfy each of the prerequisites of class certification. *Chavez v. Plan Benefit Services, Inc.*, 957 F.3d 542, 545 (5th Cir. 2020) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (emphasis added)). "[T]o satisfy the rigor

---

[21] Because Alliance is no longer a party to this action, as all claims against it have been dismissed, the class certification analysis focuses on the arguments made by the Woods and the Hospital Defendants.

requirement, a district court must detail with specificity its reasons for certifying." *Chavez*, 957 F.3d at 545. Courts must "explain and apply the substantive law governing the plaintiffs' claims to the relevant facts and defenses, articulating why the issues are fit for classwide resolution." *Id*. Courts must do so because a class action is an exception to "the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979).

To proceed as a class action under Rule 23, the plaintiff seeking to "sue as a representative party on behalf of all class members" must establish that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). The plaintiff must also show that the putative class action fits within one of the categories described in Rule 23(b). *See Horton v. Goose Creek Index. Sch. Dist.*, 690 F.2d 470, 483 (5th Cir. 1982). Here, the Woods seek class certification under Rule 23(b)(1) and/or 23(b)(2).

## B. Rule 23 prerequisites

Four prerequisites must be met by all classes: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. FED. R. CIV. P. 23(a); *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016). The Supreme Court has held that "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact," typicality and adequacy of representation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011); *Ibe v. Jones*, 836 F.3d 516,

528 (5th Cir. 2016); FED. R. CIV. P. 23(a). Along with these prerequisites, the Fifth Circuit has interpreted Rule 23 to contain an implied prerequisite of ascertainability, noting that "[i]t is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 n.3 (5th Cir. 2007). Accordingly, the Court will determine whether the Woods have met their burden.

### 1. Clearly defined class

"An order that certifies a class action must define the class and the class claims, issues, or defenses." FED. R. CIV. P. 23(c)(1)(B). Here, the Woods propose a class of:

> All patients with generic commercial insurance who made a payment to the Providers or their debt collectors after receiving a balance bill. The class period includes patients who made such a payment within three years prior to the commencement of this action on February 26, 2020.

[196], ¶ 4. In the alternative, the Woods request "the Court exercise its discretion to redefine the damages class, or certify an issues class to resolve the following questions of law:

> Whether the practice of collecting balance bills breaches the oral or implied contract made between the patient and the Providers at the point of sale and/or is an actionable violation of Miss. Code § 83-9-5(1)(i) and, thus, violates 15 U.S.C. § 1692f(1), which forbids the collection of any amount not expressly authorized by the agreement creating the debt or permitted by law.

*Id.*

But before the Court can decide whether the class is clearly defined, the Court must first consider whether its dispositive findings on the Woods' statutory claims and FDCPA claims impact the proposed class at the outset. In granting Alliance's Motion to Dismiss or for Summary Judgment [221], and the Hospital Defendants' Motion for Partial Summary Judgment [223], the Court dismissed the Woods' statutory violation claims based on Mississippi Code Section 83-9-5

and the Woods' FDCPA claims. Accordingly, only the Woods' breach of contract claims against the Hospital Defendants remain for class certification consideration since the Woods do not seek class certification for their fraud and civil conspiracy claims. In ruling on these motions, the Court also found that while the Woods' original Complaint was filed on February 26, 2020, the operative Amended Complaint [45] was filed nearly one year later on February 23, 2021.

In light of these dispositive rulings, the Court finds that the Woods' proposed class is no longer clearly defined. While the Court has discretion to redefine the class sua sponte, the Court has determined that it would be more proper for the Woods to do so in a subsequent motion to certify class. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004); *Rogers v. Epson Am., Inc.*, 648 F. App'x 717, 719 (9th Cir. 2016) (finding the district court did not abuse its discretion when it did not sua sponte redefine the proposed class, as that burden rests with the plaintiff). Indeed, the proposed classes currently before the Court do not fully consider the remaining breach of contract claim against the Hospital Defendants—that Chastity's Plan allegedly prohibits balance billing. Based on the Woods' proposed classes presented, the Court would not "be able to identify class members at some stage of the proceeding." *Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015) (quoting William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 3:3 (5th ed. 2011)). Therefore, the Woods' Motion to Certify Class is denied.

### 2. Numerosity

Even if the Woods' proposed class was clearly defined, their Motion would still fail on the numerosity prong. Under Rule 23(a)(1), a class action is proper where "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). The Fifth Circuit has held that the "mere allegation that the class is too numerous to make joinder practicable, by itself, is not

sufficient to meet this prerequisite." *Fleming v. Travenol Laboratories, Inc.*, 707 F.2d 829, 833 (5th Cir. 1983). Instead, to satisfy the numerosity prong, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981). That said, "the number of members in a proposed class is not determinative of whether joinder is impracticable." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). The focus is on "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000). Accordingly, "assessing numerosity also entails consideration of 'the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim.'" *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013) (citation omitted).

Here the Woods estimate that the proposed class is "geographically dispersed in Mississippi, Alabama and Tennessee" and that there could be "hundreds, if not thousands, of patients who have . . . paid a balance bill in some amount." [196], pg. 14. In support, the Woods assert that North Mississippi Health Services operates its flagship hospital in Tupelo, with community hospitals in Amory, Eupora, Iuka, Ponotoc, West Point, as well as in Hamilton, Alabama. *Id.* According to the Woods, North Mississippi Health Services' flagship hospital in Tupelo "services more than 730,00 people in 24 counties in north Mississippi, northwest Alabama, and portions of Tennessee." *Id.* Given this information, the Woods assert that the Court should find that numerosity is satisfied.

The Hospital Defendants argue, however, the Woods fail to establish numerosity. The Court agrees. Rule 23(a)(1) is not "a mere pleading standard," and a plaintiff must put forth

*evidence* demonstrating numerosity. *See Wal-Mart*, 564 U.S. at 350; *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 484 (3rd Cir. 2018). Here, the Woods have not provided the Court with such evidence—"whether in the form of a declaration, deposition testimony, expert opinion, or written discovery response—establishing enough putative class members for numerosity purposes." *Molinari v. Financial Asset Management Sys., Inc.*, No. 18-cv-1526-SLE, 2020 WL 4345418, at *4 (N.D. Ill. Jul. 29, 2020). Instead, the Woods have provided only conclusory assertions that the numerosity requirement has been met.

While the Woods urge this Court to rely on the "common sense assumptions" offered to support a finding of numerosity, without evidence of the class size, such assumptions are merely speculation and inappropriate for this prerequisite. *See Mielo*, 897 F.3d at 486. The Court recognizes that the Woods point to large number of patients who received services from North Mississippi Health Services—indeed this number is upwards of 700,000. "Yet they have presented no evidence that would permit [the court] to use 'common sense' to determine—rather than speculate about—the portion of those" patients who actually have policy language similar to Chastity's and who received, and paid, a balance bill from the Hospital Defendants.[22] *Id.* "[A]lthough those odds might be enough for a good wager, [the court] must be mindful that '[m]ere speculation as to the number of class members—even if such speculation is 'a bet worth making'—cannot support a finding of numerosity." *Id.* (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 (3rd Cir. 2013). Indeed, on issues affecting class certification, "a court may not simply assume the truth of the matters as asserted by the plaintiff." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Like other factual determinations underlying Rule

---

[22] The proposed class currently before the Court references generic commercial insurance, but the record reflects that Chastity had a self-funded plan.

23 determinations, it is a "plaintiff's burden to demonstrate numerosity by a preponderance of the evidence." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013). Without more, the Woods have not met their burden.

The Woods make an alternative argument asking the Court to "hold open" the issue of numerosity pending the submission of additional evidence. In support, the Woods cite to *Zeidman v. J. Ray McDermott & Co.*, where the Fifth Circuit affirmed the district court's decision denying the plaintiff's motion for class certification without prejudice to reassert additional evidence of numerosity. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981). Pursuant to this authority, the Woods will be permitted to file additional evidence in support of the numerosity requirement after sufficient discovery is completed. *Zeidman*, 651 F.2d at 1040.[23]

Having determined that the Woods' Motion to Certify Class fails on numerosity grounds and also because the proposed class is not clearly defined, the Court declines to consider the remaining Rule 23 prerequisites. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013) ("[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."); *Hinton*, 567 F. Supp. 3d at 47.

## V. CONCLUSION

**IT IS THEREFORE ORDERED AND ADJUDGED** that Alliance Collection Service, Inc.'s Motion to Dismiss or for Summary Judgment [221] is GRANTED. All of the Woods' claims asserted against Alliance Collection Service Inc. are DISMISSED WITH PREJUDICE.

---

[23] *See also Katz v. Curis Pharmacy, LLC*, No. 22-cv-644, 2023 WL 5769499, at *4 (S.D. N.Y. Sep. 7, 2023); *see also Hinton v. District of Columbia*, 567 F. Supp. 3d 30, 47 (D.C. 2021).

**IT IS FURTHER ORDERED AND ADJUDGED** that North Mississippi Health Services, North Mississippi Clinics, LLC, North Mississippi Medical Center, Inc., and Tupelo Service Finance's Motion for Partial Summary Judgment [223] is GRANTED.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Woods' Motion to Certify Class [195] is DENIED WITHOUT PREJUDICE to refiling.

This, the 29th day of September, 2023.

**TAYLOR B. McNEEL**
**UNITED STATES DISTRICT JUDGE**