IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**STANLEY WOOD** *and* **CHASTITY WOOD,** *Individually, and on Behalf of a Class of Similarly Situated Persons*　　　　　　　　　　**PLAINTIFFS**

**v.**　　　　　　　　　　**CIVIL ACTION NO. 1:20-cv-42-TBM-RP**

**NORTH MISSISSIPPI HEALTH SERVICES, INC.** *et al.*　　　　　　　　　　**DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter arises out of the medical treatment Chastity Wood received in 2017 from various providers in the North Mississippi Health Services system, specifically the balance-bills received from those treatments. According to the Woods, the remaining defendants—North Mississippi Health Services, North Mississippi Clinics, LLC, North Mississippi Medical Center, Inc., and Tupelo Service Finance (collectively, the "Hospital Defendants")—agreed to abstain from balance-billing and are therefore liable for breach of contract, fraud and misrepresentation, and civil conspiracy. The Hospital Defendants have now filed a Motion for Summary Judgment [247] on these claims. For the reasons discussed fully below the Hospital Defendants' Motion is granted and this case is dismissed.

### I. BACKGROUND AND PROCEDURAL HISTORY

In 2017, Chastity Wood received medical treatment from North Mississippi Health Services, North Mississippi Clinics, LLC, and North Mississippi Medical Center, Inc. Prior to receiving treatment, however, these Hospital Defendants required that she present a card

demonstrating entitlement to coverage pursuant to an insurance policy or health plan.[1] [45], pg. 3. The Woods assert that these Hospital Defendants "accepted the employee benefits card . . . and copied it front and back." *Id*. at 4. The front of the card stated, "[t]he Plan will only consider an Assignment of Benefits (AOB) valid under the condition that the Provider accepts the payment received from the Plan as consideration in full for the services, supplies and/or treatment rendered, less any required deductibles/copays/coinsurance." *Id*. at pg. 4. And the back of the card provided that an "ASSIGNMENT OF BENEFITS (AOB) is a waiver of the Provider's right to balance bill the patient. Depositing checks received from the Plan represents accord and satisfaction and will take precedence over any previous terms." *Id*. at 4.

The Woods assert that these Hospital Defendants confirmed that Chastity was entitled to coverage under her employee benefit plan ("the Plan") and required Chastity to execute a "Consent for Treatment, Admission, and Release of Health Information." *Id*. at pg. 5. The consent form included an assignment of benefits that gave the Hospital Defendants a guarantee of payment via an assignment of "all rights, benefits and interest under [her] health plan . . . in consideration for services rendered." *Id*. (internal quotations and citations omitted). In their Amended Complaint, the Woods assert that the assignment of benefits created a contract "between the Providers and the Plan when the Providers used an assignment of benefits to obtain payments from the Plan, and accepted the payments pursuant to the express terms, conditions and limitations contained in the Plan—" specifically, "that the patient not be balance billed for any amount beyond applicable cost sharing amounts (i.e. copayments, deductibles, or

---

[1] Through her employer, Chastity was insured under an employee benefit plan administered by Health Cost Solutions, and her husband, Stan, was insured under the state health plan administered by Blue Cross/Blue Shield. [45], pg. 3. According to the Amended Complaint [45], the Woods "examined their plan documents before the treatments began and determined the lower annual deductible under Chastity's plan would save them from significant expense." *Id*.

2

coinsurance), or charges for non-covered services." *Id.* at pgs. 4, 11. But the Woods have since abandoned their argument that the assignment of benefits created a contract between the Providers and the Plan. Now, the Woods' argument is a novel contractual claim that involves third-party beneficiary status through an alleged accord and satisfaction agreement. This new contractual claim, which is set forth only in their Response, is discussed later in this Opinion.

In 2018, at some point after receiving at least 48 payments from Health Cost Solutions, the Hospital Defendants demanded that the Woods pay almost $50,000.00 in balance bills. *Id.* Although the Woods attempted to resolve the situation, their efforts were futile. So when the Hospital Defendants offered a special "tax time deal"—that the Woods pay their debt before April 1, 2019 for a limited time 20% discount—the Woods, fearful they would miss out on a one-time opportunity to obtain a discounted rate, secured a home equity line of credit and paid the Hospital Defendants. *Id.* at pg. 7. After payments were made pursuant to the "tax time deal," however, former defendant Alliance Collection Services, Inc., demanded an additional payment of $8,936.05. *Id.* at pg. 8. The Woods refused and filed their original complaint on February 26, 2020, and their Amended Complaint on February 23, 2021.[2] Now before the Court is the Hospital Defendants' Motion for Summary Judgment on Remaining Claims [247].[3]

---

[2] A number of motions have been filed since the filing of the Woods' original complaint. For brevity, the lengthy procedural history and analysis of prior dispositive motions set forth in the Court's prior Order [241], *Wood v. N. Mississippi Health Servs., Inc.*, No. 1:20-cv-42-TBM-RP, 2023 WL 6396045, at *2-4 (N.D. Miss. Sep. 29, 2023), is incorporated here by reference.

[3] Although the Hospital Defendants also discuss the Woods' Fair Debt Collection Practice Act claims, the Woods concede that such claims were dismissed by the Court in its prior Order [241]. [250], pg. 2; *Wood*, 2023 WL 6396045, at *21 n. 19.

## II. STANDARD OF REVIEW

Summary judgment is warranted when the evidence reveals no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *see also Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024) ("[A] party opposing a properly-supported summary judgment motion 'may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial.'" (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998))). "When ruling on a motion for summary judgment, 'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the [nonmoving party].'" *Ragas*, 136 F.3d at 458 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

## III. ANALYSIS AND DISCUSSION

### A. Breach of contract

To be sure, the breach of contract claim addressed in the Woods' Response [250] to the Hospital Defendants' Motion for Summary Judgment is not the same breach of contract claim asserted in their Amended Complaint [45]. In their Amended Complaint, the Woods' argued that their breach of contract claim arose out of an assignment of benefits when the Providers obtained payments from Chastity's Plan and then accepted those payment pursuant to the conditions and limitations within the Plan documents. [45], pg. 11. Now, however, the Woods abandon this theory and concede the assignment of benefits "is merely the vehicle the Providers used to obtain payments directly from the plan." [250], pg. 22. According to the Woods, "the question is not whether the [assignment of benefits] is a new contract independent of the Plan that prevents balance billing," but "whether acceptance of payments from the Plan constitutes a contract resulting in an accord and satisfaction." [250], pg. 22.

The Woods further assert that the Plan placed clear conditions on its acceptance of an assignment of benefits—such as the alleged prohibition of balance billing—and the Hospital Defendants' acceptance of its payments. Because these conditions were included for the Woods' direct benefit, the Woods argue they "are intended third-party beneficiaries of the contract between the Providers and the Plan." [45], pg. 11. It is the Woods' position, therefore, that this accord and satisfaction agreement between the Hospital Defendants and the Plan, to which Chastity was a third-party beneficiary, was breached when the Hospital Defendants collected and attempted to collect balance bills from the Woods.

5

The Hospital Defendants dispute the Woods' implied contract theory, arguing there is no contract between the Hospital Defendants and the Plan. The Court agrees and the Hospital Defendants are entitled to summary judgment on the Woods' breach of contract claim because: (1) the Woods do not plead accord and satisfaction in their Amended Complaint and (2) even if the Woods could assert a third-party breach of contract claim arising from an accord and satisfaction agreement, their claim would still fail because there is no underlying contract between the Hospital Defendants and the Plan.

**1. The Woods do not plead accord and satisfaction in their Amended Complaint**

It is worth repeating that the Woods' breach of contract theory has evolved throughout the course of this litigation. At the outset, the Woods alleged that the assignment of benefits the Hospital Defendants used to obtain payment from the Plan created an implied contract to which the Woods were third-party beneficiaries. [45], pg. 11. But in their Response [250] to the Hospital Defendants' Motion for Summary Judgment, the Woods have attempted to change course. They now argue "the question is not whether the [assignment of benefits] is a new contract independent of the plan . . . [but] whether acceptance of payments from the Plan constitutes a contract resulting in an accord and satisfaction." [250], pg. 22. It is well-settled, however, that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. Of Supporters of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990). In fact, the term "accord and satisfaction" is never mentioned in the breach of contract allegations of the Amended Complaint. [45], pgs. 10, 11. Since the Woods did not plead a breach of contract theory based on an alleged accord and satisfaction, but rather raised this

6

claim for the first time in their Response [250], the Court may not consider it. *Cutrera*, 429 F.3d at 113 ("The district court properly considered only Appellant's § 1983 claims based on the equal protection and due process grounds raised in the complaint and correctly granted summary judgment on the claims as pled.").

**2. Third-party beneficiary theory**

Even if the Woods did plead a third-party breach of contract claim arising out of an accord and satisfaction agreement in their Amended Complaint, they provide no authority—and the Court is aware of none—that an accord and satisfaction is a cause of action rather than an affirmative defense.[4]

Out of an abundance of caution, however, the Court will address the Woods' third-party beneficiary theory. The Woods argue that Chastity was a third-party beneficiary to an accord and satisfaction agreement between the Hospital Defendants and the Plan, which was allegedly breached when the Hospital Defendants accepted the Plan's payments and subsequently balanced billed Chastity for amounts not paid by the Plan. [250], pg. 23. An accord and

---

[4] To be sure, this issue may be a closer call for the Woods if the Hospital Defendants sued the Woods for the full amount of nearly $50,000.00 and the Woods were asserting accord and satisfaction as a *defense*. But that is not the case. Instead, the Woods attempt to use accord and satisfaction as a sword by asserting it as a cause of action. *See Hutzel v. City of Jackson*, 33 So. 3d 1116, 1122 n.5 (Miss. 2010) (recognizing accord and satisfaction as an affirmative defense under Mississippi law); *White v. White*, --- So. 3d ----, 2024 WL 1061874, at *10 (Miss. Ct. App. 2024) (recognizing same) (citing *Pruitt v. Sargent*, 349 So. 3d 729, 731 (Miss. 2022); MISS. R. CIV. P. 8(c) (listing accord and satisfaction among several affirmative defenses that must be pled in an answer in Mississippi)). *See also Ross Dress for Less, Inc. v. ML Development, L.P.*, No. 21-20081, 2022 WL 501394, at *3 (5th Cir. Feb. 18, 2022) (accord and satisfaction is an affirmative defense under Texas law); *Ford v. Warner-Lambert Co.*, No. 86-cv-0770-C, 1987 WL 9905, at *1 n. 1 (D. Mass. Apr. 8, 1987) (citing *Rust Engineering Co. v. Lawrence Pumps, Inc.*, 401 F. Supp. 328, 333 (D. Mass. 1975) ("Accord and satisfaction . . . is an affirmative defense, not a cause of action.")); *Jones v. Nationwide Advantage Mortg. Co.*, No. 1:17-cv-189, 2018 WL 1569835, at *3-4 (M.D.N.C. Mar. 27, 2018) (citations omitted) (finding that under North Carolina law, "the doctrine of accord and satisfaction is an affirmative defense to a breach of contract claim, not a cause of action," but concluding that even if not foreclosed by law, plaintiff had not asserted sufficient facts to support an accord and satisfaction); *Basira Na'Imah Bey Express Tr. v. Carrington Mortg. Servs., LLC*, No. 1:22-cv-1020, 2023 WL 4868083, at *3 (M.D.N.C. Jul. 31, 2023) (finding same); *Richmond Manor Apts., Inc. v. Certain Underwriters at Lloyd's London*, No. 09-cv-60796, 2011 WL 13175618, at *9 (S.D. Fla. Feb. 28, 2011) ("Accord and satisfaction is an affirmative defense and not a claim.") (citing *Republic Funding Corp. of Florida v. Juarez*, 563 So. 2d 145, 147 (Fla. 5th DCA 1990); FLA. R. CIV. P. 1.110(d)).

satisfaction is "[a] method of discharging a claim whereby the parties agree to give and accept something in settlement of the claim and perform the agreement, the 'accord' being the agreement and the 'satisfaction' its execution or performance, and it is a *new contract* substituted for an *old contract* which is thereby discharged, or for an obligation or cause of action which is settled, and must have all of the elements of a valid contract." *Reed v. Am. Gen. Life & Acc. Ins. Co.*, 192 F. Supp. 2d 641, 647 (N.D. Miss. 2002) (quoting Black's Law Dictionary 17 (6th ed. 1990) (emphasis added)). "The burden of proving an accord and satisfaction 'is upon the one who maintains the affirmative of that issue.'" *Wallace v. United Mississippi Bank*, 726 So. 2d 578, 590 (Miss. 1998) (quoting *Simmons v. Langston*, 128 So. 2d at 749, 750 (1961)).

But for there to be an accord and satisfaction between the Hospital and the Plan to which Chastity is a third-party beneficiary, there must first be an underlying contract between the Hospital and the Plan. *Whitney v. Cook*, 53 Miss. 551, 556 (Miss. 1876) ("where the new agreement, consideration or contract is taken in satisfaction of the old, and is so intended by the parties, then the accord and satisfaction is complete. It is unnecessary for us to amplify by an elaboration of cases, for we consider the rule to be well established by our own Supreme Court."); *F.D.I.C. v. Brewer*, 823 F. Supp. 1341, 1347 (S.D. Miss. 1993) (explaining the essential elements of accord and satisfaction require the "execution of an accord which discharged the old claim.").

The Woods have since abandoned their breach of contract theory arising out of the assignment of benefits in favor of their accord and satisfaction theory. In doing so, they wholly fail to allege a contract existed between the Hospital Defendants and the Plan. In fact, the Woods explicitly argue that "[t]he agreement *Chastity allegedly entered into with Hospital Defendants*

8

before payment was made by the Plan was replaced by the accord-and-satisfaction agreement that arose when the Providers billed the Plan, accepted its payments, failed to appeal the adjustments, and then failed to refund the Plan's benefits so they could be paid directly to Chastity, its intended beneficiary." [250], pgs. 22, 28 (emphasis added). Thus, through their own briefing, the Woods admit there was no underlying contract between the Hospital Defendants and the Plan—but rather with the Hospital Defendants and Chastity. [250], pg. 22, 28. This is bolstered by the Hospital Defendants' repeated argument that "there was never a dispute between the Hospital and the Plan concerning the Plan benefits. The Hospital's recourse was with Mrs. Wood." [257], pg. 8. On the record before the Court, the Woods have not shown "by clear and convincing evidence," the existence of an accord and satisfaction to which Chastity was a third-party beneficiary. *Wallace*, 726 So. 2d at 590. The Woods' breach of contract claim is therefore dismissed.

**B. Fraud and misrepresentation**

The Woods assert four different claims for fraud and misrepresentation—that the Hospital Defendants fraudulently claimed nearly $50,000 in balance bills; did not inform them of their third-party beneficiary status; did not inform them that balance billing was prohibited; and that the Hospital Defendants defrauded them when claiming the "tax time deal" would resolve all of their outstanding debt. [45], pgs. 9-10. To recover under a theory of fraudulent misrepresentation, a plaintiff must prove: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and

9

proximate injury. *Hobbs Auto., Inc. v. Dorsey*, 914 So. 2d 148, 153 (Miss. 2005) (citation omitted). "Proving fraud is difficult, as it ought to be. Clear and convincing evidence is required." *Martin v. Winfield*, 455 So. 2d 762, 765 (Miss. 1984).

In their Amended Complaint, the Woods allege that the Hospital Defendants fraudulently claimed "nearly $50,000 in balance bills were legally collectable when they knew or should have known this was not true." [45], pg. 9. The Woods also allege that the Hospital Defendants did not inform them of their third-party beneficiary status and did not inform them that balance billing was prohibited. *Id.* at pgs. 9-10. But the Court has now found, in two separate opinions, that the Hospital Defendants were not prohibited from balance billing by statute or through contractual provisions.[5] [241]; *Wood v. N. Mississippi Health Servs., Inc.*, No. 1:20-cv-42-TBM-RP, 2023 WL 6396045, at *2-4 (N.D. Miss. Sep. 29, 2023). Since the Woods have not provided provide clear and convincing evidence in support of their first three fraud and misrepresentation claims, summary judgment is proper as to these claims. *See Zeitoun v. Seal*, No. 2:13-cv-107-HSO-RHW, 2014 WL 2931796, at *13-14 (S.D. Miss. Jun. 30, 2014) (dismissing "fraud and misrepresentation" claim where plaintiffs did not provide clear and convincing evidence to support allegations made in their complaint and failed to plead arguments they later tried to raise in response to a summary judgment motion).

The Woods' last claim for fraud and misrepresentation is based on the alleged "tax time deal." In their Amended Complaint, the Woods argue that the Hospital "Defendants defrauded

---

[5] *See Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 450 n. 5 (5th Cir. 2022) ("In the context of her breach of contract claim, [plaintiff] asserts that [defendant] 'breached' by billing for unauthorized services. In the context of her tort claim for fraudulent misrepresentation, she contends that [defendant] 'fail[ed] to perform' its obligations as set out in the agreements. But both claims as pled are predicated on the same injury: contractual breach. Accordingly, we analyze [plaintiff]'s fraudulent misrepresentation claim under the penumbra of her breach of contract claim.").

10

the Woods when claiming the 'tax time deal' would resolve all outstanding debts then employing ACS[6] to collect $8,936.05 from the Woods in October 2019." [45], pg. 10. According to the Woods, the alleged fraud at issue here is similar to that in *Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488, 495 (5th Cir. 2004). Yet as the Hospital Defendants point out, *Goswami* involved violations of the Fair Debt Collection Practice Act—not fraud. Assuming arguendo that *Goswami* is controlling, however, the rule the Woods rely upon remains inapplicable to the facts at issue here. In *Goswami*, the Fifth Circuit found the debt collector "made false or misleading statements about the settlement authority it held from Capital One both in the discount it was authorized to offer and the time within which Goswami was allowed to accept the offer." *Goswami*, 377 F.3d at 496. The Fifth Circuit explained:

> The letter states, falsely, that '*only during the next thirty days*, will our client agree to settle your outstanding balance due with a thirty (30%) percent discount off your above balance owed.' (Emphasis added). In actual fact, Capital One had authorized [the debt collector] to give debtors such as Goswami a 30% discount at *any time*, not just for a period of thirty days. In fact, [the debt collector] was authorized to offer a 50% discount at the time Goswami received the collection letter in question. The statement in the collection letter is untrue and makes it appear that Capital One's offer of a 30% discount was a one-time, take-it-or-leave-it offer that would expire in thirty days. The obvious purpose of the statement was to push Goswami to make a rapid payment to take advantage of the purported limited time offer.

*Id.* Unlike in *Goswami*, however, the Woods provide no evidence that the Hospital Defendants either authorized a higher discount that was not communicated to the Woods, or that the Hospital Defendants' April 1 deadline was mere lip-service rather than an actual deadline. In fact,

---

[6] Alliance Collection Service, Inc., was dismissed as a party in this Court's prior Order [241]. *Wood*, 2023 WL 6396045, at *1. Specifically, this Court dismissed the Woods' fraud claims against ACS, among other reasons, because the Woods alleged that the Hospital Defendants were the ones who offered the "tax time deal," not ACS. *Id.* at 22 (citing [45], pg. 7).

11

the record reflects that the deal authorized by the Hospital Defendants is actually the deal offered to the Woods. [247-13], pg. 2. Thus, the Woods' reliance on *Goswami* is misplaced.

Additionally, the Mississippi Supreme Court has held that "[i]t is clearly the law that a misrepresentation which neither does a plaintiff any harm nor causes a loss is not actionable." *McMullan v. Geosouthern Energy Corp.*, 556 So. 2d 1033, 1037 (Miss. 1990). Indeed, "[i]t is a fundamental principle of law that . . . in order to secure relief on a basis of fraud . . . the person seeking redress must have been damaged, injured, or harmed as a result of the asserted fraud." *Monsanto Co. v. Cochran*, 254 Miss. 399, 180 So. 2d 624, 628 (1965) (citation and internal quotations omitted) *overruled on other grounds by Tideway Oil Programs, Inc. v. Serio*, 431 So. 2d 454 (Miss. 1983). Here, it is undisputed that the Woods have not paid the remaining $8,936.05 owed to the Hospital Defendants. *See* [45], pg. 15; *see also* [250], pg. 16. And according to the Hospital Defendants, they are not seeking this $8,936.05 and the statute of limitations has run. As a result, "[a]bsent injury there can be no fraud." *Koury v. Ready*, 911 So. 2d 441, 446 (Miss. 2005); *Kinney v. Catholic Diocese of Biloxi*, 142 So. 3d 407, 418-19 (Miss. 2014) ("Because 115 Plaintiffs did not donate to rebuild the church, it is impossible for them to have been injured by any alleged misrepresentation.").

Finally, even if the Hospital Defendants represented to the Woods that the "tax time deal" would resolve all of the their debt—which is hardly discussed in the Woods' briefing—the Hospital Defendants have provided evidence that the outstanding bill for $8,936.05 was excluded from the "tax time deal" by mistake. [248-14], pgs. 4-5. According to the Hospital Defendants, there is no evidence that they were aware of this mistake prior to authorizing the "tax time deal" to the Woods. And after the mistake was discovered, the Hospital Defendants submit they

"discounted the $8,936.05 debt by twenty percent as well." [248], pg. 23. The Woods fail to respond or rebut the Hospital Defendants' argument, and without more, the Woods cannot prove their fraud and misrepresentation claim by clear and convincing evidence.

**C. Civil conspiracy**

"Under Mississippi law, the elements of a civil conspiracy are: (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result." *Rex Distrib. Co., Inc. v. Anheuser-Busch*, LLC, 271 So. 3d 445, 455 (Miss. 2019) (citation and internal quotations omitted). "Mississippi follows the rule of almost all jurisdictions in uniformly requiring that civil conspiracy claims be predicated upon an underlying tort that would be independently actionable." *Ward v. Life Investors Ins. Co. of America*, 383 F. Supp. 2d 882, 890 (S.D. Miss. 2005) (citation omitted).

The Woods assert that the Hospital Defendants "conspired together to avoid the contractual payment limitations to which the Providers agreed when they accepted Chastity as a patient, obtained an assignment of benefits . . . and received and accepted payments from the Plan." [45], pg. 18. Based on these allegations, the Woods' civil conspiracy claim against the Hospital Defendants is derivative of their breach of contract claim. But because the Woods' breach of contract claim against the Hospital Defendants has been dismissed, so too must their civil conspiracy claim.[7] *MultiPlan, Inc. v. Holland*, 937 F.3d 487, 496 (5th Cir. 2019) (affirming district court's dismissal of civil conspiracy claim where summary judgment was granted on underlying breach of contract claim); *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th

---

[7] The Woods fail to rebut the Hospital Defendants' argument that dismissal of their underlying breach of contract claim warrants dismissal of their civil conspiracy claim.

13

Cir. 2007). Since civil conspiracy claims cannot stand alone, summary judgment is proper as to this claim. *Wells v. Shelter Gen. Ins. Co.*, 217 F. Supp. 2d 744, 755 (S.D. Miss. 2002); *Aiken v. Rimkus Consulting Group Inc.*, 333 Fed. App'x 806 (5th Cir. 2009).

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Hospital Defendants' Motion for Summary Judgment on Remaining Claims [247] is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that this CASE is CLOSED.

This the 30th day of September, 2024.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE